647 So.2d 279 (1994)
Roger W. GEORGIA, Appellant,
v.
State of Florida, UNEMPLOYMENT APPEALS COMMISSION and Wells Fargo Guard Service, Inc. of Florida, Appellees.
No. 94-00483.
District Court of Appeal of Florida, Second District.
December 9, 1994.
*280 Thomas G. DiFiore, Tampa, for appellant.
William T. Moore, Tallahassee, for appellee Unemployment Appeals Com'n.
No appearance for appellee Wells Fargo Guard Service, Inc.
PARKER, Acting Chief Judge.
Roger W. Georgia appeals the order of the Unemployment Appeals Commission (UAC) which reversed the findings of the appeals referee and concluded that Georgia is not entitled to unemployment benefits. We reverse because the UAC made additional findings of fact which are not supported by the record.
Georgia worked for Wells Fargo Guard Service. He voluntarily left his employment after one year and applied for unemployment benefits under Chapter 443, Florida Statutes. The claims adjudicator denied the benefits, and Georgia filed an appeal with the Florida Department of Labor and Employment Security. The issue before the appeals referee was whether Georgia voluntarily left employment with good cause attributable to the employing unit under section 443.101, Florida Statutes (Supp. 1992). The referee concluded that Georgia left his employment with good cause attributable to his employing unit and therefore was entitled to benefits.
The referee made the following findings of fact relevant to this appeal:
The claimant worked for the employer from April 1, 1992, until August 3, 1993. The claimant was a full-time site training supervisor. Though the claimant was employed by Wells Fargo, he worked on site at the Anheuser Busch Corporation. During the claimant's employment, he was harassed by various Anheuser Busch employees. One employee threw a card into his face and told him he did not have to take this "bull shit" when he could not gain access onto the premises. The claimant complained about this particular employee and about the plant manager. The plant manager often questioned the claimant's abilities and would ask the claimant if he knew what his job was. The claimant complained to his supervisors with Wells Fargo. He was assured that the matters would be taken care of. Nevertheless, the plant manager continued to make negative comments to the claimant. The plant manager asked the claimant to carry his personal beer to the plant manager's car then asked him again if he knew what his job was. The claimant also complained to the Wells Fargo supervisors about the shipping/receiving supervisor with Anheuser Busch. This particular Anheuser Busch supervisor had the responsibility of properly loading the Anheuser Busch trucks. The claimant would be in charge of weighing these trucks prior to allowing them off the premises. If they did not meet proper weight standards, the claimant would have to call the shipping/receiving supervisor and inform him that the *281 truck needed to be taken back and unloaded. The claimant would have contact with this shipping/receiving supervisor on Saturdays. The shipping/receiving supervisor would become very upset if the truck needed to be unloaded. The claimant had complained about the shipping/receiving supervisor to his Wells Fargo supervisors and was assured that something would be done. The claimant never complained to the Wells Fargo main office because he was told not to and because if he complained, he would be transferred to a lower-paying position.
On the claimant's last day of work, he inspected one of the beer trucks before it left the grounds. He determined that it was 334 pounds over weight. The claimant was told that someone was on the phone for him. The claimant took the receiver and discovered that it was the shipping/receiving supervisor, who asked if the truck was overloaded. The claimant responded in the affirmative, at which time the shipping/receiving supervisor stated, "God damn, son of a bitch." The shipping/receiving supervisor then immediately slammed the phone down. The claimant determined that he did not need to accept this type of treatment. The claimant quit his job because he was tired of the constant verbal abuse.
In additional testimony at the hearing, Georgia testified that he got verbal abuse daily from a Busch supervisor and Busch employees and nothing was ever done about it.
Lawrence Faber, a field supervisor who worked in Wells Fargo's main office, was the only representative of the employer at the hearing. Faber testified that he had no conversations with Georgia regarding his employment and that he received no complaints regarding the Wells Fargo and Busch employees. Faber testified that the main office was not aware, through Georgia or anyone else, of constant verbal abuse directed at Georgia, and that Georgia could have come to the office first and he would have been transferred at close to the same rate of pay.
The referee made the following conclusions of law based on the above facts:
The evidence shows that the claimant quit his job because he could not tolerate the verbal abuse of Anheuser Busch employees. The burden is on the claimant to prove that he quit with good cause attributable to the employer. The claimant has done so in this case. The evidence shows that the claimant took reasonable steps to amend the situation. The evidence shows that the claimant made many complaints to his direct supervisors about the various Anheuser Busch employees and was assured that his Wells Fargo supervisors were taking care of the situation. Nonetheless, the harassment continued from the same Anheuser Bush employees. The claimant met the burden of proof that he was harassed on the job and he took reasonable steps to amend the situation. The employer has presented no evidence that they took measures to alleviate the claimant's situation.
The referee further concluded that Georgia acted reasonably in not calling the Wells Fargo main office especially after he had been told not to do so by his supervisors.
The UAC reversed the decision of the appeals referee concluding that Georgia voluntarily left work without good cause attributable to the employer. The rationale for this decision was:
The referee reasoned that the claimant attempted to resolve his complaints, but that the employer took no remedial action. Contrary to this reasoning, the record is devoid of competent evidence that the employer could have done anything to resolve the claimant's complaints. While the employer advised the claimant that it would try to address these complaints, the employer had no actual authority over the client's employees and could not give them specific directives. For the employer to have done so may have resulted in the loss of the client's business. The employer could have assigned the claimant to a different work site but he did not wish to accept a transfer.
Georgia correctly argues that the UAC's decision is based upon the additional findings that Wells Fargo had no actual authority *282 over the Busch employees, could not have taken any measures to correct the situation, and could have assigned Georgia to a different work site but that he did not wish to accept a transfer. We agree with Georgia that there was no evidence in the record to support these additional findings.
While the UAC has the right to affirm, modify, or reverse the findings and conclusions of the referee, it may do so only if there is no competent evidence to support the referee's determination. David Clark & Assocs., Inc. v. Kennedy, 390 So.2d 149 (Fla. 1st DCA 1980). Here, the referee's factual determination that Georgia voluntarily left his employment for good cause attributable to the employer is supported by competent, substantial evidence; therefore, the UAC cannot substitute its findings of fact for those of the referee. See Lovett v. Florida Unemployment Appeals Comm'n, 547 So.2d 1253 (Fla. 1st DCA 1989). Further, the UAC improperly made additional findings of fact which are not supported by the record. See David Clark & Assocs., Inc. Therefore, the UAC erred in reversing the findings and conclusions of the referee and in basing its determination on additional findings not supported by the record.
Reversed and remanded with directions for the UAC to affirm the order of the appeals referee.
BLUE and QUINCE, JJ., concur.