651 So.2d 233 (1995)
Joy S. ROSMOND, Appellant,
v.
UNEMPLOYMENT APPEALS COMMISSION and NSA Polymers, Inc., Appellee.
No. 93-2772.
District Court of Appeal of Florida, Fifth District.
March 3, 1995.
Joy S. Rosmond, pro se.
William T. Moore, Tallahassee, for appellee Unemployment Appeals Com'n.
No appearance for appellee NSA Polymers, Inc.
GOSHORN, Judge.
Rosmond appeals from an order of the Unemployment Appeals Commission denying her unemployment compensation benefits. Rosmond, an accountant for a plastics manufacturing firm, was fired after she refused to fill out a form relating to the costing process *234 of certain color changes which she had researched. The hearing officer concluded that she intentionally refused to follow a valid work order from her supervisor and that this act constituted misconduct, thus disqualifying her from receiving benefits. The commission affirmed.
The form in question is entitled "ENGINEERING CHANGE NOTICE"; however, in reality, it is a simple form to be filled out by an employee suggesting a product change. To support an employee's recommendation, only five items of information are required. These merely identify the product to be changed, the reason for the change, and the areas of the company affected by the recommended change. Space is provided for approval by various departments. The information to be provided does not require an engineering background. In fact, the evidence shows that the company employed only one engineer and that the form in question had previously been completed by a buyer, an assembly person, a molding representative, and a customer service person.
We find there is competent evidence that Rosmond attended a company meeting on April 16, 1993. The written stated purpose of the meeting was to inform all employees of the intended use of the Engineering Change Notice (ECN) procedure, to discuss the procedure, and to learn of any concerns or suggestions for improvement. It was made clear that anyone could request a change and that the person requesting the change must write up the request on the ECN form.
In December of 1992, as a result of her job responsibilities, Rosmond suggested a product change and was requested to fill out an ENC form. She refused to do so, contending that she was not capable of filling out the form. She admits that she could have completed parts of the form, but made no effort to do so. The evidence supports the unemployment appeals referee's findings that the specific task requested of Rosmond was within the scope of Rosmond's employment and that "[a]lthough the claimant [testified she] felt unqualified to do the work correctly, she made no attempt to complete the task, and never asked for help, either from her supervisor or others. She simply refused to do the work."
This court is not to substitute its judgment for the agency's judgment as to the weight of the evidence on any disputed finding of fact. § 120.68(10), Fla. Stat. (1993); Dart Indus., Inc. v. Department of Labor & Employment Sec., Div. of Unemployment Compensation, 596 So.2d 725 (Fla. 5th DCA 1992). Because there is competent substantial evidence to support the hearing officer's finding that Rosmond's action was insubordinate and constituted misconduct, we affirm.
AFFIRMED.
PETERSON, J., concurs.
W. SHARP, J., dissents, with opinion.
W. SHARP, Judge, dissenting:
Because I disagree that there is sufficient competent, substantial evidence to support the hearing officer's findings that filling out an engineering change notice was within Rosmond's scope of employment duties and competence, I would reverse. Rosmond was hired in September 1992 as a cost accountant for NSA Polymers, Inc. In December 1992, Rosmond prepared a report regarding variations in the same product line and the costs associated with these variations. Her supervisor asked her to fill out an engineering change notice based on this report. Apparently, change notices were to be filled out by employees when they saw a needed change or correction and the notice was then sent to the company's board for approval.
Rosmond refused to fill out the change notice, because she thought she was unqualified to do so since she was not an engineer. Rosmond acknowledged that she knew or could find some of the information needed on the change notice. However, she did not know all of the information. More importantly, Rosmond did not know whether the changes to the product line were needed from an engineering standpoint. She had simply reported costs associated with the various products. Rosmond was fired for insubordination after she refused to fill out the change order.
*235 The Unemployment Compensation Law provides that no benefits may be received if an employee is discharged for misconduct connected with his/her work. § 443.101(1)(a), Fla. Stat. (1993). "Misconduct" includes conduct evincing such "willful or wanton disregard of an employer's interest" or "carelessness or negligence of such a degree or recurrence as to manifest culpability, wrong intent or evil design." § 443.036(26), Fla. Stat. (1993).
In determining whether misconduct has occurred that would disqualify a claimant from receiving unemployment benefits, the statute should be liberally construed. § 443.031, Fla. Stat. (1993). The Unemployment Compensation Law is remedial in nature and thus its disqualifying provisions must be construed narrowly to determine whether an employee has exhibited work-related misconduct sufficient to support a denial of unemployment compensation benefits. Doyle v. Florida Unemployment Appeals Commission, 635 So.2d 1028 (Fla. 2d DCA 1994); Hummer v. Unemployment Appeals Commission, 573 So.2d 135 (Fla. 5th DCA 1991).
Defiance of an employer or refusal to follow a reasonable request or requirement of an employer has been deemed to be "misconduct" disqualifying the employee from receiving benefits. However, the finding of misconduct generally involves the absence of any legitimate reason for the disobedience, repeated refusals or failures to follow directions, or the employee's attempts to further his interests at the cost of the interest of the employer. See, e.g., National Insurance Services, Inc. v. Florida Unemployment Appeals Commission, 495 So.2d 244 (Fla. 2d DCA 1986) (employee's refusal to clean coffee area because they did not use the area constituted misconduct where all employees were required to take turns cleaning the area); Caputo v. Florida Unemployment Appeals Commission, 493 So.2d 1121 (Fla. 3d DCA 1986) (principal's failure to obey a directive form the superintendent to cease and desist certain religious activities constituted misconduct); Kraft, Inc. v. State, Unemployment Appeals Commission, 478 So.2d 1183 (Fla. 2d DCA 1985) (employee's refusal to work in freezer where there was no showing that the medical reasons prevented him or that conditions were harmful to his health constituted misconduct); Hines v. Department of Labor and Employment Security, 455 So.2d 1104 (Fla. 3d DCA 1984) (employee's belligerent refusal to comply with his foreman's legitimate work order constituted misconduct); Lundy's Market, Inc. v. Florida Department of Commerce, 373 So.2d 433 (Fla. 3d DCA 1979) (employee who repeatedly failed to carry out her employer's instructions regarding the handling of a cash register was guilty of misconduct); Citrus Central v. Detwiler, 368 So.2d 81 (Fla. 4th DCA 1979) (employee, who was disgruntled with his transfer, deliberately disregarded his foreman's order to continue working and left area to complain to his supervisor).
These cases also involve legitimate work orders and tasks in the employee's area of expertise or ones which require no expertise. In contrast, an employee is not guilty of misconduct for refusing to do an unreasonable task or one which is outside the scope of his/her employment contract. See Maynard v. Florida Unemployment Appeals Commission, 609 So.2d 143 (Fla. 4th DCA 1992) (employee was not guilty of misconduct when she refused to work a different schedule or accept a lower-paying position when her new schedule varied substantially from the previous one and the employer did not give her a viable alternative); Vazquez v. GSB Builders Corp., 431 So.2d 739 (Fla. 4th DCA 1983) (employee who was specifically told that he would not be required to do lawn maintenance was not guilty of misconduct when he refused to do lawn maintenance work without additional compensation). As the court in Vazquez explained:
In making our determination we rely upon Sewell v. Sharp, 102 So.2d 259 (La. App.2d Cir.1958) where it was held, `In determining, however, what constitutes misconduct, the standard to be applied is that of the employment contract, expressed or implied, which fixes the worker's duties in connection with his work, viewed in the light of the employer's duties, responsibilities, and obligations to the employee.' .. . Further, in Brennan v. Commonwealth of Pennsylvania, Unemployment *236 Compensation Board of Review, 17 Pa.Commw. 569, 333 A.2d 794 (1975) it was stated, `Where the refusal is of additional work, the pivotal determination is whether the additional assignment is a reasonable one, i.e., of such a nature that in the context of a claimant's primary job his employer could reasonable [sic] expect him to complete it.'
431 So.2d at 741.
In the present case, the appeals referee found that Rosmond's supervisor asked her to perform a specific task which was within the scope of her employment and that she refused to do so. This statement appears under the "conclusions of law" portion of the recommended order. But it is a crucial fact finding. However, this record does not contain competent, substantial evidence to support this finding.
At the hearing, only two witnesses testified for the employer, Jan Caulder, the personnel director, and Christine Cummings, the controller and Rosmond's immediate supervisor. Cummings testified that there was a meeting on April 16th attended by ten employees and that at that time, they "went over what an ECN (engineering change notice) procedure was, that anyone in the organization can request a change." Cummings did not initially testify that Rosmond attended the meeting. Later, when questioned by Caulder, Rosmond testified that she did not remember being at the meeting. Caulder then stated it was a meeting conducted by Walt Garvin. Rosmond testified that she had never been to a meeting conducted by Garvin. Later in the hearing, Cummings testified that Rosmond was present at the April 16th meeting. Walt Garvin, who allegedly conducted the meeting, did not testify nor did any of the other people who attended the meeting.
The appeals referee did not specifically find that Rosmond had attended the April 16th meeting on ECNs. However, even if Rosmond did attend the meeting, this evidence did not establish that Rosmond was instructed on how to fill out ECNs. The memo from the employer on implementing ECNs reflects that the accounting department was to "assess the change and determine cost impact." The memo does not state that the accounting department was to initiate changes. Cummings admitted that Rosmond would receive copies of ECNs after they had been approved in order to update her accounting files. This is consistent with Rosmond's testimony that she received the ECNs after the changes had been made. Thus it was logical for Rosmond to have attended a meeting on ECNs because she was required to process them for their cost impact. However, this evidence is insufficient to establish that she was instructed on how to make engineering changes and to fill out the forms. As in Hannon v. Department of Health and Rehabilitative Services, 513 So.2d 215 (Fla. 1st DCA 1987), this evidence is at best ambiguous on this point.
Cummings also testified that others in the company who were not classified as engineers filled out ECNs. According to Cummings, the company had only one person classified as an engineer. The other employees who filled out ECNs included an assembly person, a molding employee, a sales representative and a customer service representative. However, it is obvious that the plant manager, assembly person and others would have knowledge of the manufacturing or engineering aspect of the company's business. Simply because these other employees were not classified as "engineers" does not mean that they lacked the requisite knowledge or expertise required to fill out engineering change forms. As in Hubbard v. Best Termite and Pest Control, 627 So.2d 581 (Fla. 2d DCA 1993), these other employees did not testify nor did they submit statements to the appeals referee. Thus their level of engineering or manufacturing expertise is unknown. Simply because they were capable of filling out ECNs does not mean that Rosmond was capable of doing so.
This evidence, at most, indicates that ECNs were not restricted to the engineer and that others (if capable) could request changes. However, there was no evidence by the employer that Rosmond was capable or that it was within her job description to fill out the requested ECN. Rosmond was hired as a cost accountant and her resume shows only an accounting background and no *237 engineering expertise. Caulder testified that Rosmond did accounts payable, accounts receivable, computer operations and costing. She admitted that the company does not have a job description but that Rosmond "did different accounting functions." There was no evidence by the employer that doing engineering or manufacturing changes was within Rosmond's job description or duties as an accountant.
Rosmond admitted that she was familiar with ECNs because she processed ECNs right from the start of her job in September 1992. However, it was not until June 1993 that she was asked to fill one out. When the appeals referee went over an actual ECN, Rosmond testified that she knew some but not all of the information required to be on the form. More importantly, she did not know whether changes needed to be made to the product based on her cost analysis. Her report simply showed a breakdown of the costs of various components. The employer did not produce any evidence as to how Rosmond's report should have been reflected on the engineering change form. Nor did the employer produce any evidence as to how or where Rosmond could obtain the information needed on the ECN relating to the technical aspects of the manufacturing process.
In sum, the only evidence to show that filling out the engineering change notice was within Rosmond's scope of employment consisted of the April 16th meeting on ECN procedure and claims that anyone, not only the company's engineer, could fill out the forms. However, the employees who attended the April 16th meeting did not testify and there was no evidence that Rosmond was instructed on how to fill out ECNs at the meeting. The other employees who allegedly filled out ECNs likewise did not testify and there is no evidence in the record as to their engineering knowledge or expertise.
Thus, the fact that other employees were capable of filling out ECNs does not establish that Rosmond was capable of doing so. There is nothing in Rosmond's resume or job duties as described by the employer to show that she was, or was required to be, knowledgeable about engineering procedures. The employer did not show how Rosmond's financial report was supposed to be reflected on the change form nor did the company show where or how Rosmond could obtain the other information needed to properly complete the form. In my view, the evidence which was adduced by the employer is insufficient to constitute the competent, substantial evidence needed to support the appeals referee's finding. See Hubbard v. Best Termite and Pest Control, 627 So.2d 581 (Fla. 2d DCA 1993); Simmons v. Kalin, Inc., 627 So.2d 1175 (Fla. 2d DCA 1993); Hannon v. Department of Health and Rehabilitative Services, 513 So.2d 215 (Fla. 1st DCA 1987); Shacklett v. State, 460 So.2d 557 (Fla. 2d DCA 1984).
I would reverse.