654 So.2d 1054 (1995)
Mary Juanita LeCROY and Joyce A. Williams, Appellants,
v.
UNEMPLOYMENT APPEALS COMMISSION and United Telephone Company of Florida, Appellees.
Nos. 94-2721, 94-2735.
District Court of Appeal of Florida, First District.
May 22, 1995.
*1055 Mary Juanita LeCroy and Joyce A. Williams, Tallahassee, for appellants.
Geri Atkinson-Hazelton, Gen. Counsel, and John W. Kunberger, Tallahassee, for Unemployment Appeals; Susan V. Stucker, Sr. Atty., Altamonte Springs, for United Telephone Co., appellees.
BARFIELD, Judge.
In these consolidated appeals, Mary Juanita LeCroy and Joyce A. Williams challenge orders of the Unemployment Appeals Commission (UAC) reversing the decisions of the appeals referee, which reversed the determinations of the claims examiner that they are not entitled to unemployment compensation. We reverse and remand for proceedings to determine whether each was entitled to unemployment compensation for the period of time following her separation corresponding to the amount of severance pay she received.
As the result of a merger and the employer's subsequent reorganization and reduction in force, both appellants were told that they would receive a reduction in pay starting in August 1994, and both were offered participation in a "Change in Control Plan" negotiated as part of the merger, which provided specified benefits including severance pay if they left employment by March 8, 1994, one year after the merger. The Plan stated that its purpose was
. . to encourage and motivate Employees to devote their full attention to the performance of assigned duties without the distraction of concerns regarding involuntary termination of their employment due to Centel Corporation's (Centel) merger with Sprint Corporation (Sprint). Centel believes that it is in the best interests of its Employees, customers, shareowners and the communities it serves to provide for financial assistance through severance payments and other benefits to eligible Employees who are involuntarily terminated upon or within a certain period after a Change in Control.
Other pertinent sections provided:
4.1 The Plan shall be offered to each Employee who, during the period commencing on and ending one year immediately following the Closing Date (the CIC Period), is involuntarily terminated for any reason other than a reason specified in Section 4.3. During the CIC Period, an Employee who is required to accept a Significant Change in Office Reporting Location and or a Reduction in Compensation shall be deemed involuntarily terminated for a reason other than a reason specified in Section 4.3 and shall be offered the Plan unless the Employee accepts employment at such changed location and/or reduced compensation. An Employee so accepting shall be offered the Plan if, subsequently during the CIC Period, the Employee is involuntarily terminated for any reason other than a reason specified in Section 4.3, or is deemed involuntarily terminated for another Significant Change in Office Reporting Location and/or Reduction in Compensation unless again accepted by the Employee.
4.2 An Employee offered participation in the Plan shall receive benefits under the Plan only if the Employee: (1) is Terminated under the Plan for a reason specified in Section 4.1, (b) executes any and all documents necessary for participating in the Plan, including but not limited to a *1056 general release, and (c) terminates employment on the date required by the particular Plan offering or on a date acceptable to Management.
4.3 Notwithstanding any other provision of the Plan to the contrary, an Employee shall not be covered by or eligible for any of the benefits of the Plan, if, prior to being offered participation in the Plan: (a) the Employee (1) voluntarily resigns, or (2) voluntarily retires from employment; (b) the Employee is (1) terminated, or (2) reassigned to a position which results in (A) a Reduction in Compensation, or (B) Significant Change in Office Reporting Location, and such termination or reassignment is "for cause" including but not limited to unsatisfactory job performance or behavior prejudicial or injurious to the Company or its successor; or (c) the Employee's employment terminates because of death or disability.
Both appellants chose to accept participation in the Plan because of the impending pay reduction and job uncertainty, and both worked until March 3, 1994.
The employer disputed the initial determination that appellants were entitled to unemployment benefits. After taking statements from the parties, the claims adjudicator concluded that appellants had each "elected to resign and accept the employer's separation package rather than retain employment under the new terms," that the reason was not attributable to the employer, and that each of them was therefore disqualified from receiving unemployment benefits. They both appealed, and a consolidated hearing was held before the appeals referee, including appellants and three other similar employees.
In each of the referee's notices of decision, he reversed the claims adjudicator's determination, finding that the claimant had voluntarily left employment, but concluding that the proposed pay reduction would "substantially decrease the claimant's pay and clearly afforded the claimant with good cause attributable to the employer for leaving employment." The employer appealed the notices of decision involving LeCroy and Williams, and the UAC reversed both decisions, citing Uniweld Products, Inc. v. Industrial Relations Commission, 277 So.2d 827 (Fla. 4th DCA 1973), and concluding that the approximately 5% reduction in pay for LeCroy and Williams "was not so substantial as to constitute a material alteration [in the terms of employment] that would have impelled the average, prudent employee in similar circumstances to relinquish gainful employment." It noted that in the other similar cases, where the proposed hourly rate reduction was at least 15%, the claimants had been found entitled to unemployment compensation, but it stated that those pay reductions "were so substantial a change in the terms of employment as to provide the claimants with good cause to quit."
The evidence presented to the appeals referee supports his findings that appellants voluntarily left their employment for good cause attributable to their employer, and that they are entitled to unemployment compensation. The particular circumstances of these cases amounted to good cause which would impel the average reasonable worker to voluntarily quit her position. See Platt v. Unemployment Appeals Commission, 618 So.2d 340 (Fla.2d DCA 1993); Dean v. Unemployment Appeals Commission, 598 So.2d 100 (Fla.2d DCA), rev. denied, Unemployment Appeals Commission v. Dean, 605 So.2d 1268 (Fla. 1992); Marcelo v. Department of Labor and Employment Security, 453 So.2d 927 (Fla.2d DCA 1984).
The UAC's order is REVERSED and the case is REMANDED to the UAC with instructions to remand to the appeals referee for further proceedings to determine whether each of the appellants is entitled to unemployment compensation for the period of time following her separation which corresponds to the amount of severance pay she received. See Martell v. Unemployment Appeals Commission, 654 So.2d 1203 (Fla. 1st DCA 1995).
ZEHMER, C.J., and SHIVERS, Senior Judge, concur.