697 So.2d 900 (1997)
Carrie M. TEDDER, Appellant,
v.
FLORIDA UNEMPLOYMENT APPEALS COMMISSION and Barnett Banks, Inc., Appellees.
No. 96-01096.
District Court of Appeal of Florida, Second District.
July 16, 1997.
Rehearing Denied August 13, 1997.
James Garrity of Garrity & Fulford, P.A., Tampa, for Appellant.
David J. Stefany and Maria N. Sorolis of Hogg, Allen, Norton & Blue, P.A., Tampa, for Appellee Barnett Banks, Inc.
*901 No appearance for Appellee Florida Unemployment Appeals Commission.
BLUE, Judge.
Carrie M. Tedder appeals the order of the Florida Unemployment Appeals Commission (UAC) reversing the appeals referee and denying her unemployment compensation claim. Because the UAC improperly substituted its factual findings for that of the appeals referee, we reverse.
Tedder worked for Barnett Bank for nine years. At the time of her discharge from employment, she worked as a customer service representative in the telebanking department. Tedder's job included crediting customers' accounts for certain previously assessed service charges, including automatic teller machine (ATM) charges. Barnett policy prohibited customer service representatives from making credits to their own accounts. Over a period of six months in 1995, Tedder removed fifteen dollars of service charges, including four ATM charges, from her own account. Tedder's entitlement to the credits was not questioned. When a supervisor discovered the credits, Tedder was fired.
Barnett challenged Tedder's claim for unemployment compensation benefits. At the hearing before the appeals referee, Tedder denied that she was aware of the Barnett policy at the times she personally adjusted her account. The appeals referee accepted Tedder's testimony and made the factual finding that Tedder was unaware of the Barnett policy. There was competent, substantial evidence to support this finding. Accordingly, the appeals referee found that Tedder's conduct was not "misconduct connected with work" and therefore did not disqualify her from receiving unemployment compensation benefits.
Barnett appealed to the UAC which reached the "legal conclusion" that Tedder "... knew, or should have known, that she was prohibited from performing transactions on her own account...." This ruling is not a "legal conclusion," but simply and plainly a reweighing of the facts. Where there is competent, substantial evidence to support the appeals referee's factual determinations, the UAC cannot reweigh the evidence and substitute its findings of fact for those of the referee. See Georgia v. Unemployment Appeals Comm'n, 647 So.2d 279 (Fla. 2d DCA 1994); Studor, Inc. v. Duren, 635 So.2d 141 (Fla. 2d DCA 1994). The UAC's conclusion that Tedder knew of Barnett's policy constitutes a reweighing of the evidence, even though clothed as a legal conclusion. What Tedder "should have known" is a factual finding as well.
Moreover, a factual finding that Tedder "should have known" of Barnett's policy would not rise to the level of misconduct connected with work. Section 443.036(26), Florida Statutes (1995), defines misconduct connected with work as:
(a) Conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of his employee; or
(b) Carelessness or negligence of such a degree or recurrence as to manifest culpability, wrongful intent, or evil design or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.
If Tedder "knew" of the policy, there would be evidence to meet the willful disregard or wrongful intent tests as set forth above; but this would require a factual finding that directly conflicts with the appeals referee's finding. Even assuming the UAC could properly find that Tedder "should have known" of the Barnett policy, we conclude Tedder's conduct would not rise to the level of misconduct connected with work. It is obvious that misconduct connected with work requires some degree of intent. We hold that the intent necessary to constitute misconduct connected with work as set forth in section 443.036(26) could not be based on what Tedder "should have known." See Doyle v. Florida Unemployment Appeals Comm'n, 635 So.2d 1028 (Fla. 2d DCA 1994).
*902 Accordingly, we reverse the UAC's order and remand for reinstatement of the appeals referee's decision.
FULMER, J., concurs.
DANAHY, A.C.J., concurs specially.
DANAHY, Acting Chief Judge, concurring specially.
I agree with the majority that we should reverse. I also agree that the UAC impermissibly invaded the fact-finding province of the appeals referee when it circumvented the referee's factual finding that the claimant, Tedder, did not know of the bank's policy and concluded on its own that she should have known of the policy. And I further agree that even if Tedder "should have known," as the majority hypothesizes, her conduct in crediting a total of fifteen dollars to her account, a credit which the bank does not dispute she was otherwise entitled to, does not rise to that level of misconduct which disqualifies her from receiving unemployment benefits. I write only to discuss the function of the fact-finder in administrative proceedings.
The UAC in its order stated that the referee excused Tedder's actions based upon her testimony that she was not aware that she violated an employer policy and went on to state that whether Tedder knew that she was violating a specific policy was not dispositive. The UAC also found that she had been employed for nine years and "knew, or should have known" that she was prohibited from performing certain transactions on her own account. I agree with the UAC that whether Tedder "knew" of the policy is not dispositive. What is dispositive is the ultimate fact of whether she "should have known" of it. It must have sounded incredible to the UAC, as it also does to me, that this veteran telebanking employee was not aware of such a basic policy, crucial to a bank's integrity and reputation, but the referee's credence of Tedder's statement that she did not know must stand. The remainder of the evidence in the record is undisputed and includes that Tedder had received and signed a copy of the policy prohibiting the behavior for which she was terminated. It is also undisputed that her signature on the policy signified that she had read and understood the policy, and thereby agreed to its terms. Notwithstanding that, she testified she was busy that day and had to turn in the signed policy by the end of the day and did not have a chance to actually read it. Tedder's supervisor testified that each employee is required to read and sign such code of conduct or policy statement each year. Tedder had worked for Barnett for nine years. Although she claimed she had not read the policy which she had signed, she knew it well enough to adhere to its strictures in every other regard and even to the extent that she went to a supervisor to close her account at a later date, as the policy dictated.
The referee's finding of what Tedder "knew" was of a predicate fact. Nevertheless, he stopped short of making the ultimate finding of fact of whether Tedder "should have known" of the prohibition. Generally, ultimate findings of fact are necessary for proper review of administrative orders like this one. See, e.g., Pierce v. Piper Aircraft Corp., 279 So.2d 281 (Fla.1973) (worker's compensation). Ultimate facts are defined as "[t]hose facts found in that vaguely defined field lying between evidential facts on the one side and the primary issue or conclusion of law on the other, being but the logical results of the proofs, or, in other words, mere conclusions of fact." Black's Law Dictionary 1365 (5th ed.1979). Black's also defines ultimate facts as "Facts necessary and essential for decision by court. Facts which are necessary to determine issues in case, as distinguished from evidentiary facts supporting them. The logical conclusions deduced from certain primary evidentiary facts. Final facts required to establish plaintiff's cause of action or defendant's defense." Black's Law Dictionary 1522 (6th ed.1990) (citations omitted). See also Brown v. Griffin, 229 So.2d 225 (Fla.1969) (phrase "ultimate facts" in statute requiring compensation order to set forth ultimate facts means all those facts necessary to be found in a given case in order that determination of right of the parties *903 shall become pure question of law).[1]
An ultimate fact is still a fact the finding of which is solely within the province of the appeals referee. See § 120.57(1)(b), Fla. Stat. (1995). Thus, the UAC overstepped its statutory authority to find the ultimate fact that Tedder "should have known" of the policy.
Notwithstanding Tedder's violation of the policy, and even assuming, arguendo, she should have known about it, I agree with the majority that Tedder exhibited bad judgment in crediting service charges totaling about fifteen dollars to her account for non-Barnett ATM fees. This was the type of credit which she was providing to the bank's customers on a daily basis at this period because of the problems that the bank was having providing serviceable ATMs of its own. She could have accomplished this merely by asking her supervisor to credit the amounts to her account. I agree that she should not be denied her unemployment benefits because her actions did not rise to that level of misconduct evincing willful or wanton disregard of her employer's interests or negligence to such a degree or recurrence as to show wrongful intent or evil design.
NOTES
[1] I admit the distinction among evidentiary facts, ultimate facts, and conclusions of law is sometimes difficult to fathom. Compare Halverstadt v. Department of Corrections, 911 P.2d 654 (Colo.Ct. App.1995) ("ultimate facts" are conclusions of law or mixed questions of law and fact that are based on evidentiary facts and determine rights and liabilities of parties), with Fuller v. Allison Gas Turbine Div., Gen. Motors Corp., 670 N.E.2d 64 (Ind.Ct.App.1996) ("ultimate facts" are factual conclusions derived from basic facts).