711 So.2d 237 (1998)
Laura L. FANELLI, Appellant,
v.
UNEMPLOYMENT APPEALS COMMISSION, Appellee.
No. 97-1085.
District Court of Appeal of Florida, Fifth District.
May 29, 1998.
Robert S. Thurlow, of Bolt, Thurlow & Hall, P.A., New Smyrna Beach, for Appellant.
William T. Moore, Tallahassee, for Appellee.
GRIFFIN, Chief Judge.
Laura F. Fanelli ["Fanelli"] appeals the decision of the Unemployment Appeals Commission ["UAC"] denying her unemployment benefits.
Fanelli, a five year employee of the Eckerd Corporation ["Eckerd"], was transferred to the company's Holly Hill store, effective July 8, 1996. According to Fanelli, it was well known in the company that the Holly Hill store was subject to violent shoplifters. Fanelli, however, had planned to continue her *238 career with Eckerd and was "not easily intimidated." Fanelli testified, however, that she "did not realize how bad it would be." On her first day of work, for example, a disgruntled employee threatened to kill the manager. According to Fanelli there was a "constant fear factor" working at the store. The store is located in a "drug infested" high crime neighborhood and her schedule often included the closing shift. She had been advised by three or more former managers how to "stay alive" by not following shoplifters outside the store. Local police had recommended additional security due to the store's high crime location.
On July 26, 1996, the district manager, Denise Blair ["Blair"], conducted a "walk-through" and Fanelli informed her that the store's $70,000 inventory loss was due in large part to theft. Both Fanelli and her manager requested increased security to resolve the theft problem and to ensure safety, as in other Eckerd stores like DeLand, but the request was refused. According to Fanelli, previous managers had also requested security and were similarly denied. Fanelli informed Blair that she "did not feel safe in the store," but was told that she had a "bad attitude."
On August 25, 1996, "an aggressive, large, wild eyed, man" attempted to bully Fanelli into processing an illegal refund. He had previously returned another stolen item for cash after threatening the cashier. When Fanelli refused, he became upset and moved "closer and closer." Fanelli felt "physically threatened" and that her "life was in danger." Fanelli decided for her safety, as well as for the safety of her cashiers, to grant the bogus refund. She felt that doing so "saved our lives."
On the same day, a known violent shoplifter stole from the store, despite an outstanding trespassing warrant against him. Afterwards, she called the district manager at home, informed her of the incidents and said that she was resigning. According to Fanelli: "I couldn't take any more, my nerves and determination were taxed to the point of emotional break down. I had to take myself out of that environment. My career was ended."
Fanelli applied for unemployment benefits. Benefits were granted. Eckerd appealed the Division's determination and a hearing before an appeals referee was conducted on November 20, 1996.
At the hearing, Fanelli testified that she quit out of concern for her personal safety. Blair, however, testified that, according to her file, no one had been physically harmed at the store in the past and that she was unaware of violent shoplifters. She also testified that former employees had been terminated for theft which, according to Blair, accounted for the store's high inventory loss.
The referee concluded that Fanelli left her employment for good cause attributable to the employer and affirmed the determination granting Fanelli benefits on November 25, 1996. The referee made the following findings of fact:
The claimant was employed as an assistant manager from November [1991], until August 25, 1996. The claimant was transferred to her last store on or about July 1996. The claimant had concerns about [shoplifters] and the safety in the store that she transferred to. The claimant repeatedly discussed her concerns with her manager and the district manager. The claimant was informed that her request[s] for increased security measures were denied. In addition, the claimant was informed that she had a negative attitude. On August 25, 1996, the claimant had a problem with a customer who threatened her if she did not give him money "now." The claimant processed a refund that [she] would not have normally processed because of the threat by the customer. In addition, the claimant had a shoplifter in the store earlier that day. The claimant was informed by the manager that this particular shoplifter had violent tendencies, if he was stopped. The claimant quit because she felt that her safety concerns were not being addressed.
Based on the findings above, the referee made, in part, the following conclusions of law:
The record and evidence in this case show that the claimant voluntarily quit because *239 she felt that the store was not safe and her concerns about safety were not being addressed. The claimant has on previous occasions, discussed the safety issue with the district manager. The employer took no additional steps to insure the claimant's safety. After repeated discussions with management over the situation, and no additional steps to address the situation, the claimant quit. The claimant has shown that the working conditions were so egregious as to compel an average, able-bodied individual to quit their job. Therefore, it must be concluded that the claimant voluntarily quit with good cause attributable to the employing unit within the meaning of the Florida Statutes.
There were conflicts in testimony which came before the referee for resolution. All relevant conflicts were resolved in favor of the claimant, based upon the candor and demeanor of the parties at the hearing.
Eckerd appealed the referee's decision. The UAC reversed the referee's decision and held that Fanelli had not demonstrated that her fear was reasonable or that it would have compelled an average, able-bodied worker to quit. We reverse.
The UAC impermissibly re-weighed the evidence in the instant case when it found that Fanelli was not "actually threatened" and that there was no competent evidence of criminal activity at the Holly Hill store. First, it appears that the UAC misstated the referee's finding. The UAC found that:
[t]he claimant asserted that she was physically threatened by two individuals on August 25, 1996, but her evidence reflects only that a customer demanded that she process a refund stating, "I want the money now" and that she saw a known shoplifter in the store. The presence of those customers might have concerned the claimant, but the evidence does not establish that either individual physically threatened the claimant or otherwise subjected her to harm on the day she resigned.
The referee found that Fanelli was threatened by a customer who demanded a refund. Indeed, Fanelli testified that the man was "aggressive," moved "closer and closer," and that she felt she had "saved our lives" by granting his request. The referee also found that there was a shoplifter in the store who was described to Fanelli as violent by her manager.
It also appears that the UAC impermissibly re-weighed the referee's finding that Fanelli was threatened by the first shoplifter and instead found that Fanelli left her employment for personal reasons. Also, as Fanelli also points out, there is competent evidence from which the referee could conclude that an aggressive man moving closer and closer to the appellant was physically threatening. The referee's factual findings cannot be disturbed as long as they are supported by substantial competent evidence, no matter whether there is other evidence which would support a different result. Corman v. Unemployment Appeals Comm'n, 687 So.2d 963 (Fla. 5th DCA 1997); Berry v. Scotty's, Inc., 711 So.2d 575, 576 (Fla. 2d DCA 1998). The UAC also misconstrued controlling case law by requiring an "actual threat" or immediate exposure to physical harm in order to show "good cause" to leave a job due to inadequate security.
REVERSED and REMANDED.
GOSHORN and ANTOON, JJ., concur.