823 So.2d 275 (2002)
Jane S. KELLY, Appellant,
v.
UNEMPLOYMENT APPEALS COMMISSION, Appellee.
No. 5D01-1116.
District Court of Appeal of Florida, Fifth District.
August 9, 2002.
*276 Nicholas A. Shannin of McDonough, Wieland, Shannin & Gumula, Orlando, for Appellant.
John D. Maher, Tallahassee, for Appellee Unemployment Appeals Commission.
*277 SAWAYA, J.
Jane Kelly appeals the order rendered by the Unemployment Appeals Commission (the Commission) which determined that Kelly was not entitled to unemployment benefits. Rejecting the findings of the Unemployment Compensation Appeals Referee (the Referee), the Commission concluded that Kelly was disqualified from receiving benefits because she did not leave her employment with good cause attributable to her employer. We reverse.
Kelly began her employment as an assistant manager with Origins, a retail cosmetics company owned by Estee Lauder, in April 2000. In late May 2000, Kelly resigned because Origins misrepresented the wages she was supposed to earn. Following her resignation, Kelly sought unemployment compensation from the Division of Unemployment Compensation of the Florida Department of Labor and Employment Security (the Division), which denied her application based on its determination that the cause of her resignation was not attributable to her employer.
Kelly appealed the decision to the Referee who concluded, after hearing the evidence presented by the parties, that the Division's decision should be overturned. The order rendered by the Referee specifically provides:
The claimant [Kelly] became employed as an assistant manager ... on April 28, 2000. The account manager offered the claimant $20.80 per hour to take the position. After two weeks the claimant learned that she was being paid only $11.50 per hour plus the possibility of a storewide bonus if the store met its sales quota. It was a new store that opened on April 28, 2000. The claimant complained to the store manager about her pay being less than was promised. The store manager was not familiar with the claimant's pay. The store manager went to payroll. She later informed the claimant that $11.50 an hour was top pay for an assistant manager, and that the account manager must have "embellished." The store manager also told the claimant that the store was not going to meet the sales quota, and so there would be no bonus that month. The claimant quit her job because the job was misrepresented to her.
* * *
The record and the evidence in this case show that the claimant quit her job because the employer misrepresented the position to the claimant. The testimony reveals that the employer's account manager offered the claimant $20.80 per hour to accept the assistant manager position. The claimant was paid only $11.50 per hour. She complained to her immediate supervisor, the store manager, but the store manager did not resolve the claimant's grievance, and she did not tell the claimant that she could take her grievance to the account executive. The misrepresented pay furnished the claimant with good cause for leaving. Accordingly, it is held that the claimant voluntarily left her employment with good cause attributable to the employer, and she is not disqualified from receiving benefits.
Estee Lauder appealed the decision to the Commission, which rejected the Referee's findings and concluded:
The claimant quit because she was dissatisfied with the pay. The referee held that the employer's initial misrepresentation of the pay materially breached the claimant's terms of employment and gave her good cause to quit. The claimant, however, became aware of her actual pay rate two weeks after beginning work. She decided to accept the new rate of pay and continue working for five to six additional weeks. She then quit *278 because the employer did not pay her a bonus. The claimant's own testimony reflects that the bonus was not guaranteed and that she did not quit because of the wage discrepancy. The claimant left work without good cause attributable to the employing unit and is disqualified from receipt of unemployment compensation benefits.
We must determine whether the Commission improperly substituted its own findings for those of the Referee. We conclude that it did.
After a claim for unemployment benefits is initially determined by the Division, the claimant may appeal an adverse ruling in accordance with the procedure established in section 443.151(4), Florida Statutes (2001). The Division will appoint a referee who will hear the claim and, after considering all of the evidence and testimony presented, determine whether the claim should be granted or denied. The decision of the referee may be reviewed by the Commission and it "may affirm, modify, or reverse the findings and conclusions of the appeals referee." § 443.151(4)(c), Fla. Stat. (2001). This court has consistently held, however, that the Commission may do so only if there is no substantial, competent evidence to support the referee's findings.[1] Thus, where there is competent, substantial evidence to support the referee's findings of fact, the Commission may not reweigh the evidence and substitute its findings of fact for those of the referee.[2]
As this court explained in Jackson v. Unemployment Appeals Commission, 730 So.2d 719 (Fla. 5th DCA 1999), once an appeals referee makes a determination regarding a claim, the Commission reviews that decision to determine
whether the referee's findings of fact were based on competent, substantial evidence in the record and whether the proceedings on which the findings were based complied with the essential requirements of the law. In reviewing whether the record contains competent, substantial evidence to support the appeals referee's findings, the reviewing court may not make determinations as to credibility or substitute its judgment for that of the referee. Thus, the appeals referee's decision must be upheld where there is competent substantial evidence to support it. The basis for this is that the hearing officer or appeals referee in an administrative proceeding is the trier of fact, and he or she is privileged to weigh and reject conflicting evidence.
Id. (quoting San Roman v. Unemployment Appeals Comm'n, 711 So.2d 93, 95 (Fla. *279 4th DCA 1998) (citations omitted)). Moreover, the Commission may not modify a referee's findings of fact to reach a different legal conclusion. See Berry v. Scotty's, Inc., 711 So.2d 575 (Fla. 2d DCA 1998). Nor may the Commission rely on facts that were not established at the hearing conducted by the referee. Eulo v. Florida Unemployment Appeal Comm'n, 724 So.2d 636 (Fla. 2d DCA 1999).
Here the Referee found that the employer misrepresented the amount of pay and that this misrepresentation resulted in Kelly terminating her employment. Our review of the record leads us to conclude that this finding was supported by substantial, competent evidence. For example, Kelly's testimony revealed that Origins' account manager, Liz Gant (Gant), informed her that she could expect to receive $20.80 per hour plus bonuses. Shortly after Kelly began her employment, she discovered that her actual pay was $11.50 per hour. When she inquired about the discrepancy, her manager, Paulina Gall (Gall), informed Kelly that the account manager was all "fluff" and that the wage amount must have included bonuses. Rather than quit, Kelly stayed a few more weeks in the hopes that the wage discrepancy would be resolved and because she had no other job. During that period, Gall revealed that employees in the store were not going to receive a bonus. Because the pay issue was never resolved, Kelly quit.
The Commission rejected the finding that Kelly quit because her employer misrepresented the amount of her pay and determined that Kelly accepted the new rate of pay and ultimately quit because she did not receive a bonus. Moreover, the Commission found that Kelly's own testimony revealed that she did not quit because of the wage discrepancy. The Commission's findings are not supported by the evidence.
Nothing in the record indicates that Kelly left her job solely because she did not receive a bonus or that she quit for reasons other than the wage discrepancy. Rather, the evidence, which includes Kelly's own testimony, establishes that she left because she did not receive the wages promised her by Gant. Although both of the employer's witnesses testified that $11.50 per hour was at the high end of the pay scale, neither of them rebutted Kelly's assertion that Gant had promised her $20.80 per hour plus bonuses. Additionally, there was no testimony presented by Kelly or any of the other witnesses that Kelly accepted the new rate of pay. Rather, the testimony was unrebutted that Kelly continued to work after discovering the discrepancy because she had no other employment and because she was hopeful the discrepancy would be resolved. We conclude that the Referee's findings are supported by competent, substantial evidence and that the Commission improperly substituted its own findings.
We next determine whether Kelly was wrongly denied benefits in light of the findings made by the Referee. An employee is disqualified from unemployment benefits only if he or she has voluntarily left work without good cause attributable to the employer. See § 443.101(1)(a), Fla. Stat. (2001). In this context, "good cause" is generally defined as a cause "which would reasonably compel the average, able-bodied, qualified worker to give up his or her employment." Spangler v. Unemployment Appeals Comm'n, 632 So.2d 98, 99 (Fla. 5th DCA 1994). We conclude that misrepresenting the amount of salary to an employee or failure to comply with a salary agreement is sufficient cause to compel the average employee to leave his or her employment and, therefore, constitutes good cause attributable *280 to the employer to justify an award of benefits to the employee.[3]
Because the Referee's findings of fact are supported by substantial, competent evidence and a legally sufficient reason exists for an award of benefits to Kelly based on the Referee's findings, we reverse the Commission's order and remand for reinstatement of the Referee's order.[4]
REVERSED and REMANDED.
THOMPSON, C.J., and PLEUS, J., concur.
NOTES
[1] Jackson v. Unemployment Appeals Comm'n, 730 So.2d 719 (Fla. 5th DCA 1999); Fanelli v. Unemployment Appeals Comm'n, 711 So.2d 237 (Fla. 5th DCA 1998); Miller v. Unemployment Appeals Comm'n, 690 So.2d 752 (Fla. 5th DCA 1997); Rosmond v. Unemployment Appeals Comm'n, 651 So.2d 233 (Fla. 5th DCA 1995); Orange Bank v. Unemployment Appeals Comm'n, 611 So.2d 107, 108 (Fla. 5th DCA 1992) ("While the commission has the authority to reverse the findings and conclusions of the appeals referee, the commission may only do so where there is no substantial, competent evidence to support the referee's decision.") (citations omitted), review denied sub nom. Sloan v. Orange Bank, 621 So.2d 1066 (Fla.1993); Williams v. Unemployment Appeals Comm'n, 608 So.2d 572 (Fla. 5th DCA 1992); Lewis v. Unemployment Appeals Comm'n, 498 So.2d 608 (Fla. 5th DCA 1986); Lake County Sheriff's Dep't v. Unemployment Appeals Comm'n, 478 So.2d 880 (Fla. 5th DCA 1985).
[2] Jackson; Miller; Fanelli; Orange Bank; Williams; Lewis; Lake County; see also Tedder v. Florida Unemployment Appeals Comm'n, 697 So.2d 900 (Fla. 2d DCA 1997); Georgia v. State, Unemployment Appeals Comm'n, 647 So.2d 279 (Fla. 2d DCA 1994).
[3] See Kralj v. Florida Unemployment Appeals Comm'n, 537 So.2d 201 (Fla. 2d DCA 1989) (holding that employer breached the employment agreement by failing to comply with representations made to the employee that she would be earning $24,000 annually by the end of her first year and that employee's resignation was for good cause attributable to the employer); see also Manning v. State Unemployment Appeals Comm'n, 787 So.2d 954, 955 (Fla. 4th DCA 2001) ("Other courts have come to similar conclusions, finding that a reduction, or a change, in hours or salary may constitute `good cause attributable to the employer' allowing employee to terminate employment and remain eligible for benefits.") (citations omitted); Miller v. Florida Unemployment Appeals Comm'n, 768 So.2d 1218 (Fla. 4th DCA 2000) (holding that a reduction in income provided the employee with good cause to terminate his employment); Aleman v. Unemployment Appeals Comm'n, 733 So.2d 602 (Fla. 3d DCA 1999) (holding that lack of available work constituted good cause attributable to the employer); LeCroy v. Unemployment Appeals Comm'n, 654 So.2d 1054 (Fla. 1st DCA 1995) (holding that a 5% decrease in pay was good cause for leaving employment attributable to an employer).
[4] See Ferguson v. Henry Lee Co., 734 So.2d 1161 (Fla. 3d DCA 1999) (holding that because the referee's findings were supported by substantial, competent evidence and the Commission was not authorized to disregard them, the Commission's order must be reversed and the cause remanded to reinstate the referee's decision awarding benefits); Aleman; Savage v. Macy's East, Inc., 708 So.2d 689 (Fla. 3d DCA 1998); Diaz v. Winn Dixie Store, Inc., 587 So.2d 677 (Fla. 3d DCA 1991) (reversing the order under review denying unemployment compensation benefits and remanding with directions to afford the employee the benefits claimed); Forkey & Kirsch, P.A. v. Unemployment Appeals Comm'n, 407 So.2d 319 (Fla. 4th DCA 1981) (holding that the appeals referee's decision was supported by substantial, competent evidence and, therefore, the Commission's decision must be reversed and remanded with instructions to reinstate the referee's decision).