972 So.2d 1084 (2008)
Janice COSTIN, Appellant,
v.
FLORIDA A & M UNIVERSITY BOARD OF TRUSTEES, Appellee.
No. 5D07-126.
District Court of Appeal of Florida, Fifth District.
January 25, 2008.
Thomas Hockman of the Law Offices to Hockman & Hockman, Winter Park, for Appellant.
David C. Self, II, and Shira Thomas of Florida A & M University, Tallahassee, for Appellee.
LAWSON, J.
Janice Costin appeals from a final administrative order entered by Florida A & M University, ("FAMU"), which approved FAMU's dismissal of Costin from her job at FAMU's College of Law. We agree with *1085 Costin that FAMU's final order improperly rejected a pivotal finding of fact from the administrative law judge's, ("ALP), recommended order, and reverse the final order.
In its final order, FAMU states that it has accepted all factual findings made by the ALJ. Those findings include the following: Costin was employed at FAMU's College of Law from December 2002 until May 2005. Her job title was coordinator of computer applications. FAMU's policy was that "all planning, acquisitions, installations, implementations or revisions [to a computer network] must be done in conjunction with the Information Resource Manager." FAMU's Chief Information Officer, at all relevant times, was Dr. Kenneth Perry. He worked at FAMU's main campus, in Tallahassee, Florida. FAMU's law school is located in Orlando, Florida.
Although FAMU policy directed that Costin work "in conjunction with" Perry on computer network matters, Costin's written job description required that she report "directly" to the College of Law's administration in Orlando and described her "primary function" as "interact[ing] with the College of Law administrative and academic personnel in developing, maintaining, and updating computer application/systems that will enhance the productivity of the College of Law end-user." The job description also stated that Costin was to "be self-directed, and work, independently, following general policy discussions." The ALJ found that, "On those occasions when [Costin] did seek support [from Dr. Perry], she received little support from him or others in [FAMU's] Information Technology Services Department in Tallahassee."
In September 2004, the internet service was disrupted at FAMU's College of Law due to a hurricane. This led to internet access problems between FAMU's College of Law and its main campus in Tallahassee. An internet firewall was determined to be the root of the problem. Without consulting with Dr. Perry, Costin successfully replaced the faulty. Nokia firewall with an Enterasays firewall that worked. Although Dr. Perry did not pre-approve the firewall replacement, the College of Law's administration did. The ALJ found that Costin was acting at the express direction "of Percy Luney, dean of the College of Law," when she replaced the faulty firewall. At Dean Luney's request, Dr. Perry later authorized payment for the new firewall equipment. The AU found that no harm came to FAMU because of the firewall repair, because no one was able to breach FAMU's computer system as a result of Costin's activities.
FAMU's College of Law had an additional problem with its .edu website. Information from the main campus was not being posted in a timely manner onto the college of law's website. In some cases, information did not appear on the law school's website for months. To remedy this problem, Costin created a .com website at FAMUIaw.com. Dr. Perry did not approve implementation of the .com website, and felt that because .com websites were for commercial endeavors and .edu for schools, the change was a poor reflection on FAMU's College of Law. However, the ALT found that other FAMU departments also operated on either .com or .net websites at the time.
FAMU sought to justify firing Costin based upon these two changes to the computer system, alleging that it violated FAMU policy for Costin to make the changes without Dr. Perry's approval.[1] *1086 Costin filed an administrative challenge to FAMU's action, which was ultimately heard by an ALL After an evidentiary hearing, the ALT recommended that Costin be reinstated, based upon his conclusion that termination of Costin's employment was not an available sanction under FAMU's administrative rules, given the facts presented.
At the administrative hearing, FAMU had the burden to establish by a preponderance of the evidence that there was just cause to terminate Costin under its complaint procedures for tenured or permanent status employees, located at section 6C3-10.232 of the Florida Administrative Code. See Fla. Admin. Code R. 6C3-10.232(3); § 120.57(j), Fla. Stat. (2006); Allen v. School Bd. of Dade County, 571 So.2d 568 (Fla. 3d DCA 1990).
Florida Administrative Code Rule 6C3-10.230(5) allows FAMU to discipline an employee for "just cause," which is defined to include "misconduct." The rule allows, but does not require "progressive discipline," meaning "that the form of disciplinary action imposed against the employee increases in extent or severity with each action taken." Fla. Admin. Code R. 6C3-10.230(5)(b).[2] Where discipline is warranted, the rule authorizes sanctions of "a written reprimand, suspension or dismissal from employment," and provides that the "discipline that is imposed will depend upon the seriousness of the offense and any aggravating or mitigating circumstances." Id.[3] FAMU's rules further provide that its discipline of an employee can only include dismissal for cause where the "employee's actions adversely affect the functioning of the University or jeopardize the safety or welfare of the employee, other employees or students." Fla. Admin. Code R. 6C3-10.230(5)(f).
The ALJ first found that Costin's failure to consult with Dr. Perry violated FAMU policy, and therefore met the definition of "misconduct" warranting disciplinary action under FAMU's administrative rules. However, the ALJ found that dismissal was not authorized based upon the evidence presented because FAMU failed to prove that Costin "did anything that adversely affected the functioning of the university or endangered anyone." Therefore, the ALJ recommended that Costin be reinstated with full pay.
In its final order, FAMU rejected the ALJ's critical "no adverse affect" finding on the theory that it constituted a conclusion of law. We agree with Costin, however, that the finding of "no adverse affect" is an "ultimate fact" best left to the trier of fact under these circumstances. As explained in Tedder v. Florida Unemployment Appeals Commission, 697 So.2d 900, 902 (Fla. 2d DCA 1997) (Danahy, A.C.J., specially concurring), ultimate facts are those "necessary to determine issues in [a] case" or the "final facts" derived from the "evidentiary facts supporting them." Id. (citing Black's Law Dictionary 1522 (6th ed. 1990)). Ultimate facts are also regularly described as "mixed questions" of law and fact, see, e.g., Antonucci *1087 v. Unemp. App. Comm'n, 793 So.2d 1116, 1117 (Fla. 4th DCA 2001), and must generally be made by the fact finder in an administrative proceeding because they are "necessary for proper review of administrative orders." Tedder, 697 So.2d at 902; see also San Roman v. Unemp. App. Comm'n, 711 So.2d 93 (Fla. 4th DCA 1998) (finding that whether "good cause" exists for unemployment compensation claimant to voluntarily leave work frequently involves mixed question of law and fact, and is an ultimate fact best left to the fact-finder); Heifetz v. Dep't of Bus. Reg., Div. of Alcoholic Beverages & Tobacco, 475 So.2d 1277 (Fla. 1st DCA 1985) (finding that "negligent supervision and lack of diligence are essentially ultimate findings, of fact clearly within the realm of the hearing officer's fact-finder discretion.") (citations omitted). Because the ALJ's finding on the "adverse affect" issue is supported by the record, FAMU was required to accept it. See, e.g., Fonte v. State, Dep't of Envtl. Reg., 634 So.2d 663 (Fla. 2d DCA 1994) (noting that an agency may only reject a hearing officer's findings of fact if it determines from a review of the complete record that the findings were not based upon competent, substantial evidence); Brevard Co. Sheriffs Dep't v. Fla. Comm'n on Human Relations, 429 So.2d 1235, 1237 (Fla. 5th DCA 1983) ("What the Commission has done, in effect, is ignored or rejected the hearing officer's findings of fact without determining that they are not supported by competent, substantial evidence. This it cannot do.") (citations omitted); see also, Kinney v. Dep't of State, Div. of Licensing, 501 So.2d 129, 132 (Fla. 5th DCA 1987) ("Erroneously labeling what is essentially a factual determination a `conclusion of law,' whether by the hearing officer or the agency does not make it so, and the obligation of the agency to honor the hearing officer's findings of fact may not be avoided by categorizing a contrary finding as a `conclusion of law.'").
Alternatively, even if the ALJ's finding could be classified as an issue of rule interpretation (a purely legal matter), as FAMU argues, an agency is not free to reject an administrative rule interpretation set forth in an ALJ's recommended order unless it states "with particularity its reasons for rejecting or modifying" the ALJ's rule interpretation "and make[s] a finding that its substituted conclusion of law or interpretation of administrative rule is as or more reasonable than that which was rejected or modified." § 120.57(1)(l), Fla. Stat. (2006). Here, FAMU did not make the finding that its substituted "interpretation" of the rule was more reasonable than the ALJ's interpretation. Nor could it.
The ALJ interpreted rule 6C3-10.230(5)(f) as requiring an employee's deviation from university policy to result in some palpable harm to the school or one of its employees or students before a tenured or permanent status employee could be terminated (without prior discipline) based upon his or her deviation from school policy. This is a logical, plain reading of the rule. FAMU, however, claims to read the rule as meaning that any "disregard of established University policy," no matter how slight, is itself an "adverse affect to the functioning of the University" (thereby justifying termination of the employee) simply by virtue of the fact that a rule has been broken. FAMU's interpretation makes no sense because it renders the standard for termination meaningless. There would be no reason to have a special "adverse affect" requirement for the ultimate sanction of termination if any deviation from policy was by definition its own adverse affect.
Because FAMU incorrectly rejected the ALJ's conclusion that FAMU failed to prove any adverse affect resulting from Costin's misconduct, we reverse FAMU's final order and direct that FAMU enter an *1088 order that accepts the ALJ's recommendation for Costin's reinstatement with full pay.
REVERSED and REMANDED.
GRIFFIN and TORPY, JJ., concur.
NOTES
[1] FAMU also alleged that Costin inappropriately placed ad links for several computer vendors offering special student pricing on the .com website. However, when it was revealed that this same content also appeared on FAMU's .edu website, and was just carried over by Costin, FAMU dropped this allegation.
[2] Costin had never been the subject of any prior disciplinary proceeding.
[3] FAMU presented no aggravating circumstances. Costin's mitigation included the fact that her actions were approved by the law school's administration (to which she directly reported); that she had never received a negative job-performance evaluation during her tenure with FAMU; that Dr. Perry had been unreachable or unresponsive in the past; and, that her actions were required to address problems or emergencies with the College of Law's computer systems, which she successfully corrected.