596 So.2d 725 (1992)
DART INDUSTRIES, INC., Appellant,
v.
DEPARTMENT OF LABOR AND EMPLOYMENT SECURITY, DIVISION OF UNEMPLOYMENT COMPENSATION, Appellee.
No. 91-701.
District Court of Appeal of Florida, Fifth District.
March 20, 1992.
*726 Allen J. McKenna of Garwood & McKenna, P.A., Orlando, for appellant.
Louise T. Sadler, Tallahassee, for appellee.
GOSHORN, Chief Judge.
Dart Industries, Inc. (Dart) appeals from the final order of the Division of Unemployment Compensation adopting the findings of fact and conclusions of law set forth by the special deputy in her recommended order. The special deputy found that certain classes of workers were employees of Dart and not independent contractors for purposes of unemployment compensation. Dart argues the findings of fact were not based on competent, substantial evidence and the conclusions of law were thus incorrect. We affirm the final order as to the parking lot attendants, ushers, and ticket takers, but reverse as to the other four categories of workers for the reasons hereinafter discussed.

DART INDUSTRIES
Dart Industries, Inc. has two separate divisions, Tupperware Home Parties, which primarily sells plastic goods, and Tupperware Convention Center which maintains and provides a convention center for use by Tupperware Home Parties and outside third parties. Tupperware Home Parties sponsors two forms of convention events to motivate independent Tupperware dealers. The larger event is a jubilee. Tupperware Home Parties hosts five to seven jubilees per year and each jubilee lasts three days. To assist in the production of each jubilee, Tupperware Home Parties hires numerous people, including scenic painters, photographers, security officers, and stage hands. The smaller event is a session, which is similar to a jubilee but done on a smaller scale.
In addition to Tupperware convention events, Tupperware Convention Center hosts a variety of outside third party productions. The contract that outside third parties must sign requires the user to maintain adequate traffic control, security, and parking supervision for these productions. However, if the user requests, Tupperware Convention Center agrees to arrange for these services. Under the contract, the user agrees to pay for the costs of hiring any people needed for the production, such as box office personnel, stage hands, stage managers, projectionists, ticket takers, ushers, and parking lot attendants. The contract requires the user to appoint Tupperware Convention Center as its representative and agent for paying the people employed during the production. After paying the people employed, Tupperware either bills the user or withholds the amount due to Tupperware from any money collected through advance ticket sales for the user.

APPLICABLE LAW
The order of the Division of Unemployment Compensation can be set aside only upon a finding that the order was not supported by competent, substantial evidence. Gershanik v. Department of Professional Regulation, Bd. of Medical Examiners, 458 So.2d 302 (Fla. 3d DCA 1984), review denied, 462 So.2d 1106 (Fla. 1985). This court cannot substitute its judgment for the agency's judgment as to the weight of the evidence on any disputed finding of fact. § 120.68(10), Fla. Stat. (1989).
Section 443.036(19)(a)1.b, Florida Statutes (1989) defines "employment" as any service performed by "[a]ny individual who, under the usual common-law rules applicable in determining the employer-employee relationship, has the status of an employee." In Cantor v. Cochran, 184 So.2d 173, 174 (Fla. 1966) the supreme court reaffirmed its prior adoption of the tests found in the Restatement (Second) of Agency § 220 (1958) for analyzing employer-employee relationships. The Restatement sets out the following factors for consideration in determining whether one is an employee or an independent contractor:
(a) the extent of control which, by the agreement, the master may exercise over the details of the work;
(b) whether or not the one employed is engaged in a distinct occupation or business;

*727 (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
(d) the skill required in the particular occupation;
(e) whether the employer or workman supplies the instrumentalities, tools, and a place of work for the person doing the work;
(f) the length of time for which the person is employed;
(g) the method of payment, whether by the time or by the job;
(h) whether or not the work is a part of the regular business of the employer;
(i) whether or not the parties believe they are creating the relation of master and servant; and
(j) whether the principal is or is not in business.
Restatement (Second) of Agency § 220(2) (1958). Of these factors, the principal factor for consideration is the employer's right of control over the mode of doing the work. VIP Tours of Orlando, Inc. v. State, Dep't of Labor & Employment Sec., Div. of Employment Sec., 449 So.2d 1307, 1309 (Fla. 5th DCA 1984).
The special deputy heard testimony from representatives for each of the classes of workers under consideration and concluded that all classes fall within the definition of "employee," contrary to the independent contractor status previously enjoyed by each class.

SCENIC PAINTERS
Robert Moody testified as the representative of the class of scenic painters. Moody is a full time associate professor at Brandeis University, where he teaches a graduate theater program. For four years, he has travelled to Orlando to paint scenery for Tupperware. He paints backdrops which are 50 or 55 feet wide by 22 or 26 feet high and therefore, he does his work at the Tupperware studio. He works eight hours per day and five days per week for approximately nine weeks at the Tupperware studio. He negotiates the fees, times, payment, and duration of his work. He is free to accept or reject Tupperware's offer to work and either he or Tupperware is free to terminate the contract. Although Tupperware supplies the paint and tools, Moody brings some of his own tools to work. Moody considers himself an independent contractor and is responsible for paying his own taxes from his income. Moody testified that no one from Tupperware tells him how to paint, what brushes to use, or whether to spray or to brush to paint the scene. Moody also works with other companies as a scenic painter. There are very few scenic painters in the country.
The scenic painters at Tupperware work under the direction of a chargeman, who distributes the work and determines whether the scene work is complete or is satisfactory. The chargeman sets the hours for the paint crew in order to ensure that the painters work smoothly and efficiently together. The chargeman answers to the design staff, who gives Moody a blueprint and then a scale rendering of the scene. Moody then paints the scene. No one from Tupperware tells him how to do it. Although a designer might come in and ask the painters to darken the scene, the designer is only interested in a quality overall look arriving on time. While the painters' work is subject to review and correction, this review is merely to ensure that the end result meets the designer's expectations. Tupperware does not direct the details, means, or manner by which the painters achieve the end result.
The record does not support the special deputy's conclusion that the scenic painters are employees and not independent contractors. The evidence clearly demonstrates that Tupperware did not control the mode or the details of the work. The scenic painters are free to perform the task in the manner that they wish. The fact that Tupperware furnishes the place where painters can perform their work is not sufficient to establish an employer-employee relationship. Delco Indus., Inc. v. State, Dep't of Labor and Employment Sec., Div. of Unemployment Compensation, 519 So.2d 1109, 1111 (Fla. 4th DCA 1988) (holding *728 that merely furnishing offices to telephone solicitors is not a sufficient factor to establish employee status). Furthermore, the opening of the painting studio for only certain hours and the coordination of efforts by an employee of Tupperware in order to ensure a smooth flow of work are also insufficient factors to demonstrate that the scenic painters are employees because the nature of the scene work requires that the painters perform their services by a specific date. See F.L. Enterprises, Inc. v. Unemployment Appeals Commission, 515 So.2d 1340, 1342 (Fla. 5th DCA 1987) (holding that merely expecting a worker's presence at a particular location during a particular time is not sufficient to make the worker an employee). Accordingly, we find that the scenic painters are independent contractors and not employees of Tupperware.

PHOTOGRAPHERS
Edward McDonald testified as the representative of the class of photographers hired by Tupperware. McDonald has his own photography studio and business license and he bills Tupperware for his services by the hour, half-day, and full-day. He also bills for gas, food, and lodging. Tupperware is just one of McDonald's many clients. He considers himself a freelance photographer and not an employee. He handles his own taxes, is not entitled to any benefits from Tupperware, and negotiates the price for his services on every job. Tupperware tells him when to come and he works until he finishes the job. McDonald uses Tupperware's equipment or his own equipment depending on the type of job. If consistency is important in-house, he uses Tupperware's equipment, but if he is on the road, he uses his own. If several different photographers are taking pictures of scenes and the pictures are for the same catalog, then in order for the pictures to match, all of the photographers use Tupperware's equipment.[1]
Tupperware gives all of the photographers a "must" list which describes the scenes that Tupperware wants taken. However, each photographer individually decides how to shoot the scene. The photographers interpret the scene and then decide how to catch the feeling of a meeting and when to take the candid shots.
When McDonald photographs sessions, he is on his own. However, for jubilees, McDonald may work with a Tupperware staff photographer. Although the staff photographer might give some instructions, McDonald never walks around with him. Mr. Chiaccira, Tupperware's photography studio manager, testified that Tupperware hires an outside photographer like McDonald to work with the staff photographer because some events are so large that one photographer cannot cover the whole event. However, the staff photographer does not supervise the outside photographer. McDonald has also done work for Tupperware in his own studio and in Tupperware's studio. Even with tightly-controlled jobs at Tupperware's studio, McDonald testified:
I might have somebody giving me somewhat limited instruction. Then again, my background in photography permits me to be a little bit  they're not restrictive with me. I know  and we're talking technical, not necessarily how to shoot something. I have a lot of experience. I don't have anyone hovering over me.
The special deputy found that when photographers work in their own studios, they are independent contractors, but when they work on Tupperware premises, they are employees. Critical to her conclusion that photographers are employees when working on Tupperware premises was the special deputy's finding that Tupperware staff photographers direct the work done on-site. The evidence overwhelmingly contradicts that finding. The photographers decide how to shoot the scenes. Tupperware does not control the details of the work. The special deputy's conclusion was also based *729 on her finding that a photographer's pay is not reduced when he errs and has to redo work performed at a jubilee or session or in Tupperware's studio. This finding is not supported by competent, substantial evidence. Accordingly, we hold that the photographers are independent contractors and not employees of Tupperware.

SECURITY OFFICERS
Otis Reeves testified on behalf of the class called security officers. Reeves considers himself an independent contractor. When an event requires security, Tupperware asks Reeves to obtain a specific number of Florida Highway Patrol troopers to work as security officers. Tupperware pays Reeves $12 per hour to coordinate the security officers. Reeves tells the officers to go to the convention center at a specific time for a specific number of hours.
The security officers are full-time Florida Highway Patrol troopers and are free to accept or reject Tupperware's offer of work. Tupperware never tells Reeves which officers to hire. The officers sign in at Tupperware at the beginning of their shift and then sign out at the end. If needed, a Tupperware employee may bring an officer from the outside to work inside. Tupperware uses the troopers as security officers because the troopers have the authority and the skill to direct traffic on public roads. The troopers wear their Florida Highway Patrol uniforms while working as security officers. The officers also patrol the parking lot after the cars are safely brought in off the public highway. If the event involves a lot of young people, the officers also work inside and monitor the entrances for illegal substances. The officers are free to take a coffee break during any lull in the activity.
The special deputy found that the security officers are employees of Tupperware. However, contrary to the special deputy's finding, the evidence clearly shows that at best Tupperware exercises minimal control over the officers. Tupperware does not train or supervise the security officers. Tupperware hires the troopers as security officers because the already possess the authority and expertise to perform the necessary tasks. Although Tupperware may move the officers from outside jobs to inside jobs as needed, the evidence shows that Tupperware does not control how the officers carry out their jobs. Based on the evidence, we find that the troopers are independent contractors and not employees of Tupperware.

STAGE HANDS
Robert Cherney, operations manager for Tupperware, testified that the groups who rent the convention center must sign a contract. If the group needs additional labor, Tupperware will arrange for the labor for an additional fee. Approximately ninety to ninety-five percent of the groups need additional help. When a group needs a stage crew, Cherney must find the crew and therefore, he maintains a list of people to call for this purpose. The stage hands are free to reject Tupperware's offer of work.
Tupperware does not hire and keep a complete staff of stage hands because stage hands are needed so sporadically and the number of hands needed changes with every event. Over a thousand stage hands have passed through the facility during the thirteen years that Cherney has operated the center. Tupperware pays the stage hands according to the going rate in the area. The skill and competence of a stage hand is very important. When a stage hand comes to work, he is introduced to the client's representative, who provides whatever supervision is needed depending on the specific event. Nonetheless, the special deputy found that the stage hands are Tupperware's employees.
Contrary to the special deputy's finding, the evidence shows that Tupperware acts as an agent for its clients by hiring and paying the stage hands; Tupperware does not supervise or train them. Furthermore, Tupperware hires stage hands on a show-by-show basis. Stage hands do not have an obligation to accept the offer of work and are skilled in what they do. Based on the evidence, we hold that the stage hands are *730 independent contractors and not employees of Tupperware.
In summary, the record does not contain competent, substantial evidence to support the Division's order finding that the scenic painters, photographers, security officers, and stage hands are employees of Dart (Tupperware) rather than independent contractors. Accordingly, we reverse the part of the Division's order finding to the contrary and we affirm the part of the Division's order finding that the parking lot attendants, ushers, and ticket takers are employees of Dart for purposes of unemployment compensation.
AFFIRMED in part, REVERSED in part.
PETERSON and DIAMANTIS, JJ., concur.
NOTES
[1] Mr. Chiaccira, the studio manager for Tupperware, testified that using different equipment would require a lot of time to adjust colors and background values in order to achieve a uniform look. Tupperware avoids this problem by providing the photographers with identical film and cameras.