[No. E025396. Fourth Dist., Div. Two. June 1, 2000.]

SOUTHWEST RESEARCH INSTITUTE, Plaintiff and Appellant, v.
UNEMPLOYMENT INSURANCE APPEALS BOARD, Defendant and
Respondent;
JEFFERY A. YINGST et al., Real Parties in Interest.

**[Opinion certified for partial publication.*]**

---

*It is ordered that this opinion be certified for publication with the exception of part 2, pursuant to California Rules of Court, rule 976(b).

**COUNSEL**

Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone, Steven H. Gentry, and Fred Timothy Winters for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Charlton G. Holland III, Assistant Attorney General, John H. Sanders and Carolyn D. Fuson, Deputy Attorneys General,

for Defendant and Respondent and for Real Party in Interest and Respondent Employment Development Department.

No appearance for Real Party in Interest and Respondent Jeffrey A. Yingst.

**OPINION**

**GAUT, J.—**

### 1. *Introduction*

Southwest Research Institute, a Texas nonprofit corporation, appeals from a judgment denying its petition for a peremptory writ of mandate. On appeal, Southwest contends that, for purposes of paying unemployment benefits, Jeffery A. Yingst[1] was an independent contractor, not an employee, of Southwest. For several years, Yingst worked as a vendor for Southwest, obtaining gasoline samples for testing. Respondent, the Employment Development Department, defends the benefit decision of the California Unemployment Insurance Appeals Board, affirming the administrative law judge's decision that Yingst was an employee, not an independent contractor.

Southwest raises two primary issues on appeal. First, Southwest argues that the trial court applied the wrong standard of review to Southwest's petition. Second, Southwest contends that, using the proper standard of review, it was error to find that Southwest controlled the "manner and means" of Yingst's work for Southwest, thus making Yingst an employee of Southwest. We reject the former but agree with the latter and therefore we reverse.

### 2. *Standard of Review\**

. . . . . . . . . . . . . . . . . . . . . . . . . . .

### 3. *Employment or Independent Contractor Relationship*

The most important gauge of whether an employment relationship exists is "whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." (*Tieberg v. Unemployment Ins. App. Bd.* (1970) 2 Cal.3d 943, 946 [88 Cal.Rptr. 175,

---

[1]Yingst is not an active party to the appeal.

*See footnote, *ante*, page 705.

471 P.2d 975]; *Empire Star Mines Co. v. Cal. Emp. Com.* (1946) 28 Cal.2d 33, 43 [168 P.2d 686], overruled on another point in *People v. Sims* (1982) 32 Cal.3d 468, 479-480, fn. 8 [186 Cal.Rptr. 77, 651 P.2d 321]; Cal. Code Regs., tit. 22, § 4304-1.) Southwest has the burden of proof: "The burden of establishing an independent contractor relationship is upon the party attacking the determination of employment. [Citations.]" (*Santa Cruz Transportation, Inc. v. Unemployment Ins. Appeals Bd.* (1991) 235 Cal.App.3d 1363, 1367 [1 Cal.Rptr.2d 64].)

■ In the present case, the parties agree as to how Yingst performed his work for Southwest. As described in the ALJ's (administrative law judge) decision:

"The services which the claimant performed for the employer were on an occasional and sporadic basis. They were not a part of his usual means of producing income. [Yingst was employed as a dietitian.]

"The employer's business involves the collection of samples of gasoline from retail service stations which are then tested to assure compliance with various federal, state, and industry standards. The claimant would be contacted and asked if he wished to take an assignment to make such a collection. If he agreed, he would be sent containers and paperwork by the employer, along with instructions as to the location of the station from which he was to obtain the sample.

"The claimant was required to follow very precise and detailed instructions as to the manner in which he was to collect the samples and in the manner in which he was to package them and ship them back to the employer. He was not to be paid unless he precisely followed all the instructions as to the collection and shipping of the samples as well as the proper completion of the paperwork. The only discretion afforded the claimant in performing the duties for the employer was that the sample had to be collected within a seven-day period and it was up to him as to the day and time when he would actually collect the sample. The employer however had further restrictions which required that the sample be shipped within one day after its collection and the claimant was not permitted to ship the sample either on a Sunday or in a manner which would result in the sample being delivered on a Saturday.

"The claimant did receive training from the employer in his duties and his work required no particular expertise or skill as the directions for the performance of those duties were explicit."

Other evidence presented at the administrative hearing established that the instructions given to Yingst by Southwest and the requirement of a one-day

training session were dictated by the United States Environmental Protection Agency (EPA), the Reformulated Gasoline Survey Association (RFG), and the Federal Aviation Association (FAA). The field auditor who made the initial determination that Yingst was an employee commented that the instructions were more detailed than necessary for FAA compliance. But he admitted at the administrative hearing that he had no familiarity with the requirements of the FAA and the EPA. The written instructions given to Yingst, however, bear the initials "RFGC" for "Reformulated Gasoline Compliance Survey."

Except for the Saturday/Sunday limitation on collection, Yingst worked according to his own schedule. The only aspects of gasoline collection controlled by Southwest are the form of the invoice used for the vendor and the amount paid for each sample. Yingst worked occasionally for Southwest and was paid between $20 and $50 for each sample plus mileage. For each job, Yingst signed a purchase order identifying himself as an independent contractor. He also signed an affidavit stating that he believed he was an independent contractor and not an employee.

Based on the foregoing, the ALJ concluded (1) that Southwest controlled the manner and means of Yingst's work and (2) that he was an employee, not an independent contractor. The trial judge, based on his independent review, agreed. But we disagree that the former was a reasonable inference or the latter a correct legal conclusion based on the evidence.

According to the *Empire Star Mines* case, where the method of performing a task is dictated by health and safety regulations imposed by the government, the principal is not exercising the manner and means of control as an employer. In that case, a mining company imposed certain requirements on miner-lessees in accordance with safety orders of the California Industrial Accident Commission. The appellate court agreed with the trial court's finding that these requirements did not constitute exercise of the manner and means of control by the mining company so as to establish an employment relationship. (*Empire Star Mines Co. v. Cal. Emp. Com., supra,* 28 Cal.2d at pp. 40-41, 44-45.)

Neither the ALJ's decision, the trial court's ruling, nor the state's brief on appeal discusses this important distinction. Furthermore, there is no evidence that Southwest could discharge Yingst, except that it might stop calling him to collect samples. Therefore, we do not find sufficient evidence in the record from which it is reasonable to infer a finding that Southwest controlled the manner and means of Yingst's work.

Nor is there sufficient evidence of secondary factors that reasonably shows an employment relationship. (*Tieberg v. Unemployment Ins. App. Bd.,* *supra,* 2 Cal.3d at p. 950, fn. 4; *Santa Cruz Transportation, Inc. v. Unemployment Ins. Appeals Bd., supra,* 235 Cal.App.3d at pp. 1371-1372, fn. 1.) Yingst was regularly employed as a dietitian while performing sporadic work for Southwest. Other employment suggests the existence of an independent contractor relationship. (*Idaho Times Pub. Co. v. Industrial Accident Board* (1942) 63 Idaho 720 [126 P.2d 573, 577].)

After receiving some training, Yingst worked without any direct supervision in the field. He was not performing unskilled work under supervision and onsite. As to these factors, the evidence again favors an inference and finding of an independent contractor relationship. (Cal. Code Regs., tit. 22, § 4304-1, subds. (a)(2), (3) & (b)(3); *Briggs v. California Emp. Com.* (1946) 28 Cal.2d 50, 51-53 [168 P.2d 696].)

While it is true that Southwest provided Yingst with the "instrumentalities" necessary to collect gasoline samples, it is once again true that these items were federally mandated and not indicia of an employment relationship.

The fact that Yingst worked occasionally and sporadically on an as-needed basis points to the independent, nonemployment, character of his work. (Cal. Code Regs., tit. 22, § 4304-1, subds. (a)(5) & (b)(3); *Dart Industries v. Dept. of Labor & Emp.* (Fla.Dist.Ct.App. 1992) 596 So.2d 725.) The fact that Yingst was paid by the job, and not by the hour, favors Southwest's position. (Cal. Code Regs., tit. 22, § 4304-1, subds. (a)(6) & (b)(3).) Yingst's belief that he was not an employee, although not conclusive, is also a significant factor for consideration. (Cal. Code Regs., tit. 22, § 4304-1, subds. (a)(8) and (b)(5); *Tieberg v. Unemployment Ins. App. Bd., supra,* 2 Cal.3d at p. 952.)

The single factor favoring the state's position is that Yingst was doing work for Southwest that was part of its regular business. (Cal. Code Regs., tit. 22, § 4304-1, subd. (a)(7) & (10).) But that sole factor, when balanced against all the other factors is too weak to support a finding of an employment relationship.

### 4. *Disposition*

Upon review of the undisputed facts and the reasonable inferences to be made from them, we do not discern substantial evidence supporting the trial court's decision that Yingst was an employee of Southwest. The facts and

inferences compel the contrary conclusion that he was an independent contractor.

We reverse the judgment of the superior court and order that a peremptory writ of mandate issue as prayed, directing that the appeals board decision be set aside on the grounds that Yingst was not an employee of Southwest and directing the department not to charge any unemployment compensation benefits against Southwest.

The prevailing party shall recover its costs.

McKinster, Acting P. J., and Ward, J., concurred.