[No. A116649. First Dist., Div. Five. Mar. 25, 2008.]

CALIFORNIA LOGISTICS, INC., Plaintiff and Appellant, v.
STATE OF CALIFORNIA, Defendant and Respondent.

## Counsel

Law Offices of Paul B. Justi and Paul B. Justi for Plaintiff and Appellant.

Edmund G. Brown, Jr., Attorney General, and Paul D. Gifford, Assistant Attorney General, for Defendant and Respondent.

## Opinion

**STEVENS, J.**[*]—California Logistics, Inc., appeals from a judgment of dismissal entered after the trial court sustained without leave to amend the State of California's (State) demurrer to plaintiff's amended complaint. California Logistics filed the action in response to a determination by the State's Employment Development Department that delivery drivers used by the company are employees rather than independent contractors, which determination results in additional tax liability for the company. Appellant sought a declaratory judgment and injunctive relief establishing that its drivers are independent contractors. The trial court ruled the action was barred because, under section 32 of article XIII of the California Constitution (section 32), the company was obligated to first pay any taxes assessed by the state before its claim could be heard by the court. Appellant maintains that section 32, known as the "pay first, litigate later" rule, does not apply because it has been determined in prior proceedings that its drivers are independent contractors, and the State is collaterally estopped from claiming otherwise. We conclude that section 32 takes precedence over the collateral estoppel doctrine and affirm.

### Factual and Procedural Background

Because this matter was resolved at the pleading stage of the litigation by way of demurrer, the following summary of the facts is derived from the allegations set forth in California Logistics's first amended complaint. (See *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

Appellant California Logistics is a California corporation engaged in the business of arranging delivery services for its clients. The company filed an amended complaint in June 2006 alleging that the drivers who perform the deliveries for its clients are independent contractors rather than employees. The State, through various administrative agencies, has unsuccessfully attempted to challenge the independent contractor status of the drivers in

[*]Retired Associate Justice of the Court of Appeal, First Appellate District, Division Five, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

administrative and judicial proceedings.[1] The company's current business practices are identical to those at issue in the previous adjudications.

Despite the State's failure to prevail in these prior proceedings, the State's Employment Development Department (EDD) contacted California Logistics, again asserting that the company's drivers are employees. According to California Logistics, the EDD threatened to relitigate the independent contractor issue "as many times as it wanted to." The EDD sent California Logistics a "Proposed Notice of Assessment" in the amount of $1,287,898.90. That total includes amounts for unemployment insurance, personal income taxes that should have been withheld from the drivers' wages, and other taxes. California Logistics alleged that it cannot afford to pay the proposed assessment amount and, were it required to pay that amount prior to challenging the EDD's employee status determination in the courts, the company would effectively be denied access to judicial review.

In the first cause of action, California Logistics sought a declaration that the State is bound by the prior adjudications that its drivers are independent contractors. The second cause of action sought injunctive relief barring the State from redetermining this issue.

The State filed a demurrer to the first amended complaint and the trial court sustained the demurrer without leave to amend. The court concluded that it lacked jurisdiction under the "pay first, litigate later" rule because the suit constituted an attempt to enjoin the collection of a tax. It also concluded that California Logistics had failed to exhaust the administrative remedies.[2] A judgment of dismissal was entered in favor of the State.

## DISCUSSION

California Logistics maintains the trial court erred in sustaining the State's demurrer because the State is collaterally estopped from contending that the company's drivers are employees.

---

[1] We note that the specific factual allegations in the amended complaint and the documents attached to the complaint do not offer substantial support for this key allegation, that the State has repeatedly challenged the independent contractor status of the drivers. The complaint describes three California adjudications; the decisions are attached as exhibits to the complaint. First, there is a 2003 Contra Costa Superior Court order granting a petition for administrative mandamus against the Division of Labor Standards Enforcement (DLSE); the case relates to a DLSE finding of employee status, stop order, and penalty, which are not described in detail. Second, there is a 2001 decision by a San Bernardino administrative law judge of the California Unemployment Insurance Appeals Board. The case involved an appeal by the employer of a determination that an individual claimant was entitled to benefits. Third, there is a 2005 decision of the State Labor Commissioner, following a hearing in Oakland, arising out of an individual employee's claim for wages and penalties.

[2] The trial court also sustained the State's demurrer to a third cause of action for tortious interference with contractual relations. No challenge to that ruling has been raised on appeal.

Because the function of a demurrer is to test the sufficiency of a pleading as a matter of law, we apply the de novo standard of review in an appeal following the sustaining of a demurrer without leave to amend. (*Holiday Matinee, Inc. v. Rambus, Inc.* (2004) 118 Cal.App.4th 1413, 1420 [13 Cal.Rptr.3d 766].) We assume the truth of the allegations in the complaint, but do not assume the truth of contentions, deductions, or conclusions of law. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317].) It is error for the trial court to sustain a demurrer if the plaintiff has stated a cause of action under any possible legal theory, and it is an abuse of discretion for the court to sustain a demurrer without leave to amend if the plaintiff has shown there is a reasonable possibility a defect can be cured by amendment. (*Ibid.*)

█ "A taxpayer ordinarily must pay a tax before commencing a court action to challenge the collection of the tax. This rule, commonly known as 'pay first, litigate later,' is well established and is based on a public policy reflected in the state Constitution, several statutes, and numerous court opinions." (*County of Los Angeles v. Southern Cal. Edison Co.* (2003) 112 Cal.App.4th 1108, 1116 [5 Cal.Rptr.3d 575].) Section 32 provides: "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature." This constitutional provision establishes that "the sole legal avenue for resolving tax disputes is a postpayment refund action. A taxpayer may not go into court and obtain adjudication of the validity of a tax which is due but not yet paid. [¶] The important public policy behind this constitutional provision 'is to allow revenue collection to continue during litigation so that essential public services dependent on the funds are not unnecessarily interrupted.' [Citation.] 'The fear that persistent interference with the collection of public revenues, for whatever reason, will destroy the effectiveness of government has been expressed in many judicial opinions.' " (*State Bd. of Equalization v. Superior Court* (1985) 39 Cal.3d 633, 638–639 [217 Cal.Rptr. 238, 703 P.2d 1131].)[3]

█ It is well established that the applicability of section 32 does not turn on whether the action at issue specifically seeks to prevent or enjoin the collection of a tax. Instead, the provision bars "not only injunctions but also a

---

[3] With respect to challenges to the collection of unemployment insurance contributions, the Legislature enacted Unemployment Insurance Code section 1851, which specifically bars proceedings to prevent or enjoin collection of such contributions. (*First Aid Services of San Diego, Inc. v. California Employment Development Dept.* (2005) 133 Cal.App.4th 1470, 1478–1479 [35 Cal.Rptr.3d 663] (*First Aid Services*).) Because the proposed assessment at issue in this case is not limited to unemployment insurance contributions, we focus on the constitutional provision rather than the statute.

variety of prepayment judicial declarations or findings which would impede the prompt collection of a tax." (*State Bd. of Equalization v. Superior Court, supra,* 39 Cal.3d at p. 639.) The relevant issue is whether granting the relief sought would have the effect of impeding the collection of a tax. (*Western Oil & Gas Assn. v. State Bd. of Equalization* (1987) 44 Cal.3d 208, 213 [242 Cal.Rptr. 334, 745 P.2d 1360].)

*First Aid Services, supra,* 133 Cal.App.4th 1470, is pertinent to the present case. There, an employer challenged an EDD determination that an unemployment benefits applicant was an employee, rather than an independent contractor. (*Id.* at p. 1475.) The employer filed a petition for administrative mandamus seeking reversal of the determination. (*Ibid.*) The court held that the employer's action was barred by section 32, reasoning that "the net result of the relief prayed for in the challenged mandamus proceeding at issue here—reversal of the Board's finding that Whittaker is an employee of First Aid—would be to restrain the collection of unemployment insurance contributions allegedly owed by First Aid under the provisions of the Unemployment Insurance Code based on the employer-employee relationship the Board found exists between First Aid and Whittaker." (*First Aid Services,* at p. 1480, citing *Modern Barber Col. v. Cal. Emp. Stab. Com.* (1948) 31 Cal.2d 720 [192 P.2d 916] (*Modern Barber*); see also *Modern Barber,* at p. 723 ["Since the net result of the relief prayed for herein would be to restrain the collection of the tax allegedly due, the action must be treated as one having that purpose."].[4])

Appellant does not dispute the present action is analogous to *First Aid Services* in that both challenge efforts by state agencies to treat an employer's workers as employees rather than as independent contractors. Neither does it dispute that the effect of the relief it seeks would be to restrain the collection of taxes, most immediately the $1.2 million proposed assessment referenced in the amended complaint, which is based on the EDD's determination that the company's drivers are employees. Thus there is no real dispute that the present action comes within the literal terms of section 32's "pay now, litigate later" rule. It is a "proceeding . . . against this State . . . to prevent or enjoin the collection of [a] tax." (§ 32.)

Appellant however contends *First Aid Services* is factually distinguishable since that case contains no claim of collateral estoppel. In its amended complaint, appellant has pled the doctrine of collateral estoppel to bar the

---

[4] Similar to *First Aid Services* and the present case, *Modern Barber* involved an action to compel a state agency to vacate its findings that certain workers were employees within the meaning of the Unemployment Insurance Act. (*Modern Barber, supra,* 31 Cal.2d at p. 722.) The Supreme Court barred the action under a statute substantially similar to section 32, which was not adopted until 1974. (31 Cal.2d at p. 723.)

State's further determination that the company's drivers are employees. It asserts, "Appellant has structured its business to comply with the requirements of independent contractor status, the arrangements appellant has utilized have been challenged and upheld and appellant has relied on those adjudications to continue operating its business in a fashion that has been found to comply with the law." Nevertheless, assuming the truth of appellant's factual allegations and even assuming the allegations establish a basis for applying the doctrine of collateral estoppel, the company offers no authority for the proposition that this doctrine may be an exception to the section 32 "pay first, litigate later" rule.

■ Under the doctrine of collateral estoppel or issue preclusion, when an issue of ultimate fact has been determined by a valid and final judgment, that issue cannot be relitigated between the same parties in a future lawsuit. (*Ashe v. Swenson* (1970) 397 U.S. 436, 443 [25 L.Ed.2d 469, 90 S.Ct. 1189].)[5] The doctrine promotes judicial economy by minimizing repetitive litigation, prevents inconsistent judgments, which may undermine the integrity of the judicial system, and protects against vexatious litigation. (*Syufy Enterprises v. City of Oakland* (2002) 104 Cal.App.4th 869, 878 [128 Cal.Rptr.2d 808].) In criminal cases, the collateral estoppel doctrine is derived from the double jeopardy clause of the Fifth Amendment to the United States Constitution. (*In re Cruz* (2003) 104 Cal.App.4th 1339, 1344 [129 Cal.Rptr.2d 31].) As it applies in civil cases, the doctrine is a judicially created rule based on common law principles. (*Brosterhous v. State Bar* (1995) 12 Cal.4th 315, 335 [48 Cal.Rptr.2d 87, 906 P.2d 1242]; *Nakash v. Superior Court* (1987) 196 Cal.App.3d 59, 67–68 [241 Cal.Rptr. 578]; *Lazzarone v. Bank of America* (1986) 181 Cal.App.3d 581, 591 [226 Cal.Rptr. 855]; see also 7 Witkin, Cal. Procedure (4th ed. 1997) Judgment, § 280, p. 820.) It is also reflected in Code of Civil Procedure section 1908, which incorporates and is declaratory of the common law rules. (*Bartlett Hayward Co. v. Indus. Acc. Com.* (1928) 203 Cal. 522, 535 [265 P. 195]; *Great Western Furniture Co. v. Porter Corp.* (1965) 238 Cal.App.2d 502, 509 [48 Cal.Rptr. 76]; *Nakash, supra*, 196 Cal.App.3d at pp. 67–68.)

■ A civil litigant does not have an absolute right to application of the collateral estoppel doctrine. "[E]ven where the minimal prerequisites for

---

[5] At various places in its briefs California Logistics refers to both res judicata and collateral estoppel. "Collateral estoppel is one of two aspects of the doctrine of res judicata." (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 828 [88 Cal.Rptr.2d 366, 982 P.2d 229].) In its narrowest form, res judicata precludes parties from relitigating a cause of action finally resolved in a prior proceeding. (*Ibid.*) Under the collateral estoppel aspect of the doctrine, an issue necessarily decided in prior litigation may be conclusively determined as against the parties in a subsequent lawsuit on a different cause of action. (*Ibid.*) The pertinent doctrine in this case is collateral estoppel, because appellant maintains the State is estopped from relitigating the independent contractor issue regardless of the forum or cause of action.

invocation of the doctrine are present, collateral estoppel ' "is not an inflexible, universally applicable principle; policy considerations may limit its use where the . . . underpinnings of the doctrine are outweighed by other factors." ' " (*Vandenberg v. Superior Court, supra*, 21 Cal.4th at p. 829.) Courts have recognized that the Legislature may limit application of the doctrine for public policy purposes. (*People v. Carmony* (2002) 99 Cal.App.4th 317, 325–326 [120 Cal.Rptr.2d 896] ["The doctrines of res judicata and collateral estoppel are not generally considered to be constitutional rules, and the Legislature may abrogate them in appropriate circumstances."]; *Mueller v. Walker* (1985) 167 Cal.App.3d 600, 607 [213 Cal.Rptr. 442].) If the Legislature has the power to limit the application of collateral estoppel, then a provision of the California Constitution must be effective to do so. The California Constitution is "the supreme law of our state" (*Sands v. Morongo Unified School Dist.* (1991) 53 Cal.3d 863, 902 [281 Cal.Rptr. 34, 809 P.2d 809]), subject only to the supremacy of the United States Constitution. (Cal. Const., art. III, § 1.)  ▮  The doctrine of collateral estoppel cannot take precedence over section 32 and require the courts to provide relief which the Constitution specifically prohibits. (See *Patane v. Kiddoo* (1985) 167 Cal.App.3d 1207, 1214 [214 Cal.Rptr. 9] [courts cannot excuse a party from compliance with the section 32 rule on the basis of a judicially created exception to the exhaustion of administrative remedies requirement].)[6] Appellant provides no citations to authority or cogent argument to the contrary.[7]

The California Supreme Court decision *Calfarm Ins. Co. v. Deukmejian* (1989) 48 Cal.3d 805 [258 Cal.Rptr. 161, 771 P.2d 1247], demonstrates the breadth of the section 32 ban on prepayment review. There, the petitioners sought to invalidate a tax statute on the ground that the statute violated the California Constitution. (*Calfarm*, at pp. 837, 839.) The court concluded that the circumstances of the case did not justify an exception to section 32, even though the petitioners' claims raised constitutional issues. Although the

---

[6] The trial court appears to have concluded that section 32 denied it subject matter jurisdiction over the action, and the State advances that position on appeal. *First Aid Services*, *supra*, 133 Cal.App.4th at page 1481, also seems to adopt that view. On the other hand, *County of Los Angeles v. Southern Cal. Edison Co., supra*, 112 Cal.App.4th at page 1119, footnote 5, held that the "pay first, litigate later" rule does not affect a court's fundamental jurisdiction. We need not and do not decide whether section 32 deprives courts of subject matter jurisdiction or whether it simply deprives courts of jurisdiction to award certain types of relief. (See *People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 660–661 [16 Cal.Rptr.3d 76, 93 P.3d 1020].)

[7] Appellant makes a range of other arguments regarding the inadequacy of the administrative remedy, including arguments about relaxed evidentiary standards in the proceedings, the possibility that an adverse administrative ruling might be accorded undue deference by the courts, and the inability of the administrative proceedings to enjoin future attempts by the State to redetermine the independent contractor issue. Those arguments provide no basis to avoid the clear constitutional bar against the relief sought in the present action.

section 32 ban on prepayment judicial review must yield to the requirements of the federal Constitution, that exception to section 32 is "extremely narrow" and does not encompass claims based on the state constitution alone. (*Calfarm*, at p. 839 & fn. 32, discussing *Western Oil & Gas Assn. v. State Bd. of Equalization, supra*, 44 Cal.3d 208.) Accordingly, even if the collateral estoppel doctrine were rooted in the California Constitution, it would not justify an exception to section 32.

█ Finally, appellant argues that to dismiss its suit on the basis of the "pay first, litigate later" rule would violate its federal constitutional right to due process by effectively depriving it of an opportunity for judicial review, because it relied on the prior adjudications in conducting its business operations and cannot afford to pay the $1.2 million proposed assessment in order to proceed with its challenge. The California Supreme Court in *Modern Barber, supra*, 31 Cal.2d 720, has addressed this argument, ruling that a ban on prepayment review complies with the due process clause. The petitioner in *Modern Barber*, like appellant, argued that enforcement of the prepayment requirement would render it insolvent. (*Modern Barber*, at pp. 725, 732.) Rejecting the petitioner's due process claim, our high court wrote, "[t]he due process clause does not guarantee the right to judicial review of tax liability before payment. The power of a state to provide the remedy of suit to recover alleged overpayments as the exclusive means of judicial review of tax proceedings has long been unquestioned." (*Id.* at pp. 725–726.) The court then emphasized the purposes of the prepayment requirement: " 'The prompt payment of taxes is always important to the public welfare. It may be vital to the existence of a government. The idea that every tax-payer is entitled to the delays of litigation is unreason.' " (*Id.* at p. 726; see also *id.* at pp. 731–732; *Rickley v. County of Los Angeles* (2004) 114 Cal.App.4th 1002, 1013 [8 Cal.Rptr.3d 406]; *Little v. Los Angeles County Assessment Appeals Bds.* (2007) 155 Cal.App.4th 915, 923 [66 Cal.Rptr.3d 401].) We are not persuaded by appellant's due process argument.

Appellant's overall argument on appeal is similar to that put forth by the plaintiffs in *Pacific Gas & Electric Co. v. State Bd. of Equalization* (1980) 27 Cal.3d 277, 284 [165 Cal.Rptr. 122, 611 P.2d 463]. There, three public utility companies filed an action seeking to compel the State Board of Equalization to adjust the assessment of their real property in accordance with a recently enacted constitutional provision (Prop. 13). (*Pacific Gas & Electric Co.*, 27 Cal.3d at pp. 278–279 & fn. 1.) The utilities argued that to bar their suit under section 32 would deny them an adequate judicial remedy because they would be forced to litigate in more than 50 counties in order to recover their alleged overpayments. (27 Cal.3d at pp. 282–283.) The court declined to recognize an " 'inadequate remedy at law' " exception to section 32. (*Pacific Gas & Electric Co.*, at

pp. 282–283.) The court cited the policies underlying section 32 and stressed that section 32 "means what it says." (*Pacific Gas & Electric Co.*, at p. 284.) That has not changed.[8]

## DISPOSITION

The judgment is affirmed.

Jones, P. J., and Needham, J., concurred.

---

[8] Because we conclude that the relief sought in this lawsuit is barred by section 32, we need not and do not consider whether dismissal was also justified by appellant's failure to exhaust the administrative remedies. Neither need we address whether the State was a proper party to the suit.