Filed 12/5/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| WEST HOLLYWOOD COMMUNITY HEALTH AND FITNESS CENTER,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CALIFORNIA UNEMPLOYMENT INSURANCE APPEALS BOARD,<br><br>    Defendant and Respondent. | B248641<br><br>(Los Angeles County<br>Super. Ct. No. BS135715) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Luis A. Lavin, Judge.  Reversed.

Kassinove & Raskin, Edward B. Raskin and Joshua M. Caplan for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Paul D. Gifford, Assistant Attorney General, W. Dean Freeman and Lisa W. Chao, Deputy Attorneys General, for Defendant and Respondent.

\* \* \* \* \* \*

This appeal requires us to consider whether an employer may obtain judicial review of a decision from the California Unemployment Insurance Appeals Board (the Board) finding that an applicant for unemployment benefits was an employee, not an independent contractor. The Board argues that decision is not subject to judicial review because both the California Constitution and the Unemployment Insurance Code bar actions whose purpose is to prevent the collection of state taxes. Appellant recognizes that actions seeking to avoid a tax are prohibited, but argues that this case does not challenge the imposition of a tax. We agree with appellant and reverse the judgment.

## FACTS AND PROCEDURE

Mario Serban worked as a massage therapist at West Hollywood Community Health and Fitness Center, doing business as Voda Spa (Voda Spa). Serban and Voda Spa disagree as to the reason why he left that work, but the trial court found Serban had good cause to leave, and that finding is not challenged on appeal. Serban and Voda Spa also dispute whether Serban was an employee or independent contractor. That is the issue Voda Spa seeks to litigate.

### 1. *Employment Development Department Rulings*

After leaving his job at Voda Spa, Serban applied for unemployment benefits. On April 19, 2011, the Employment Development Department (EDD) sent Voda Spa a letter indicating that Serban was an employee. On May 19, 2011, the EDD sent Voda Spa notice indicating Serban was an employee and had good cause to leave work. Voda Spa appealed from those findings.

An administrative law judge heard the appeal and concluded that Serban was an employee. In a separate opinion, the administrative law judge concluded that Serban had good cause to leave his work, making him eligible for unemployment benefits. Voda Spa appealed from those determinations. The Board affirmed both findings in separate opinions. The Board's decision regarding good cause further indicated that "[t]he employer's reserve account is subject to charges."

## 2. *Voda Spa's Petition for Writ of Mandate Is Denied*

Voda Spa sought administrative mandamus pursuant to Code of Civil Procedure section 1094.5. Voda Spa sought to challenge both the decision that Serban had good cause to leave his work and the finding that he was an employee. The trial court heard the former, but granted the Board's motion to strike all allegations concerning Serban's employment status. On appeal, Voda Spa challenges only the trial court's conclusion that it could not review the Board's decision that Serban was an employee.

## DISCUSSION

We begin with relevant background on unemployment insurance, then discuss separately judicial review of the taxation and benefit decisions by the EDD. Finally, we consider *First Aid Services of San Diego, Inc. v. California Employment Development Dept.* (2005) 133 Cal.App.4th 1470 (*First Aid*), which the Board argues is dispositive and Voda Spa argues was wrongly decided.

The purpose of the unemployment insurance program is to provide benefits for "persons unemployed through no fault of their own, and to reduce involuntary unemployment and the suffering caused thereby to a minimum." (Unemp. Ins. Code, § 100.) "To finance state unemployment and disability benefits, California requires contributions from both employers and employees. Generally, employers must annually contribute to the unemployment fund based on wages paid to their employees." (*Hunt Building Corp. v. Bernick* (2000) 79 Cal.App.4th 213, 219 (*Hunt Building Corp.*).) "The employer/employee relationship determines who must make contributions to the unemployment and disability funds. [Citation.] Where an employee performs services for an employer, the employer is required to make contributions and withhold taxes; where an independent contractor performs services for a principal, the principal is not required to withhold taxes or make contributions." (*Ibid.*)

"'The taxing sections of the [Unemployment Insurance Code] are entirely separate from those concerning benefits, and . . . the provisions fixing liability for payments to the fund are to be considered accordingly.'" (*Hunt Building Corp., supra*,

3

79 Cal.App.4th at p. 219.)  "[T]here are 'significant substantive and procedural differences between the Unemployment Insurance Act's benefit and taxation components.'" (*Merchandising Concept Group, Inc. v. California Unemployment Ins. Appeals Bd.* (2010) 181 Cal.App.4th 1274, 1282.)

## 1. Judicial Review of Tax Decisions

The superior court has no power to grant a writ of mandate to prevent the collection of state taxes.  California Constitution, article XIII, section 32 (section 32) provides:  "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature."

The longstanding prohibition is based on "the dangers inherent in delaying collection of needed public revenue . . . ."  (*Pacific Gas & Electric Co. v. State Bd. of Equalization* (1980) 27 Cal.3d 277, 282.)  "The policy behind section 32 is to allow revenue collection to continue during litigation so that essential public services dependent on the funds are not unnecessarily interrupted.  [Citation]  'Any delay in the proceedings of the officers, upon whom the duty is devolved of collecting the taxes, may derange the operations of government, and thereby cause serious detriment to the public.'"  (*Id.* at p. 283.)  "Procedural due process does not require *judicial* determination of tax liability before collection of a tax [citations]; and . . . it is established that the government may effect collection of taxes by summary administrative proceedings [citation]."  (*Dupuy v. Superior Court* (1975) 15 Cal.3d 410, 416.)

Section 32 "bars 'not only injunctions but also a variety of prepayment judicial declarations or findings which would impede the prompt collection of a tax.'" (*California Logistics, Inc. v. State of California* (2008) 161 Cal.App.4th 242, 247-248.)  Similar to the constitutional prohibition, Unemployment Insurance Code section 1851 governs unemployment insurance contributions and provides:  "No injunction or writ of mandate or other legal or equitable process shall issue in any suit, action or

4

proceeding, in any court against this State or against any officer thereof to prevent or enjoin the collection of any contribution sought to be collected under this division."

Several cases have applied these principles in the context of unemployment taxes. In *Louis Eckert B. Co. v. Unemploy. R. Com.* (1941) 47 Cal.App.2d 844, the court held that a corporation could not obtain a declaratory judgment that it was not an employer within the meaning of the Unemployment Insurance Act. In that case, the Unemployment Reserves Commission was "about to tax" the corporation seeking declaratory relief. (*Id.* at p. 845.) The court held that the predecessor to Unemployment Insurance Code section 1851 precluded the lawsuit. (*Louis Eckert B. Co.*, at p. 846.) "The commission herein could not properly undertake to enforce a tax against plaintiff corporation as an employer in defiance of an adjudication that the latter did not maintain that relationship with the other parties." (*Ibid.*) The employer must pay the tax under protest and then sue to recover the amount paid. (*Id.* at p. 847.)

Interpreting a section similar to section 32, in *Modern Barber Col. v. Cal. Emp. Stab. Com.* (1948) 31 Cal.2d 720 (*Modern Barber Colleges*), our high court considered a mandamus petition to compel the commission to vacate its finding that certain persons were employees of Modern Barber Colleges, "and to cancel the charges made against the petitioner [Modern Barber Colleges] by virtue of these findings." (*Id.* at p. 722.) Judicial review was not available because Modern Barber Colleges had not paid its taxes. (*Id.* at pp. 722, 723.) The high court reasoned as follows: "It is obvious that a judgment directing the commission to vacate its findings would in effect amount to a declaration by the court that the relationship did not exist; the commission after such a judgment could not 'properly undertake to enforce a tax against plaintiff corporation as an employer in defiance of an adjudication that the latter [asserted employer] did not maintain that relationship with the other parties.'" (*Id.* at p. 723.) The court held: "Since the net result of the relief prayed for herein would be to restrain the collection of the tax allegedly due, the action must be treated as one having that purpose." (*Ibid.*)

5

More recently in *California Logistics, Inc. v. State of California, supra*, 161 Cal.App.4th 242, the court applied this rule to an employer's effort to seek review of the employee independent contractor determination after the EDD sent "a 'Proposed Notice of Assessment' in the amount of $1,287,898.90." (*Id*. at p. 246.) The employer alleged that it could not afford to pay the proposed assessment and that if it were required to pay the assessment prior to challenging the EDD's determination, it would be denied judicial review. (*Ibid*.) The court reiterated the policy that: "'A taxpayer ordinarily must pay a tax before commencing a court action to challenge the collection of the tax. This rule, commonly known as "pay first, litigate later," is well established and is based on a public policy reflected in the state Constitution, several statutes, and numerous court opinions.'" (*Id*. at p. 247.) "'A taxpayer may not go into court and obtain adjudication of the validity of a tax which is due but not yet paid. [¶] The important public policy behind this constitutional provision "is to allow revenue collection to continue during litigation so that essential public services dependent on the funds are not unnecessarily interrupted." [Citation.] "The fear that persistent interference with the collection of public revenues, for whatever reason, will destroy the effectiveness of government has been expressed in many judicial opinions.'"'" (*Ibid*.) The appellate court concluded that the relief sought in the lawsuit was barred by section 32. (*California Logistics, Inc. v. State of California*, at p. 833.)

These cases show that it is well established a party may not seek judicial review of a tax in advance of paying the tax. To challenge a tax, a party must follow these steps: "(1) the claimant files a claim for refund or credit ([Unemp. Ins. Code,] §§ 1178, subd. (a), 1241, subd. (a)); (2) the director of the [EDD] denies the claim for refund or credit (§§ 1180, 1222); (3) the claimant files a petition for review with an administrative law judge (§ 1222); (4) the administrative law judge reviews the matter and renders a decision (§ 1223); (5) the claimant or director of the [EDD] files an appeal to the . . . Board regarding the petition for review of the denial of the claim for refund (§ 1224); and (6) the . . . Board issues its order or decision regarding the petition for review of the claim for refund and serves notice of the decision (§§ 1224,

6

1241, subd. (a)).” (*Merchandising Concept Group, Inc. v. California Unemployment Ins. Appeals Bd., supra*, 181 Cal.App.4th at p. 1281.)  The sole procedure to challenge a tax is to pay the tax and then file a suit for a refund.  (*California Logistics, Inc. v. State of California, supra*, 161 Cal.App.4th at p. 247.)

## 2.  *Judicial Review of Benefit Decisions*

In contrast to a challenge to a tax decision, a party may challenge a benefit decision.  When an employer’s reserve account is charged, the employer may challenge the charges by means of a petition for writ of mandate.  (*Interstate Brands v. Unemployment Ins. Appeals Bd*. (1980) 26 Cal.3d 770, 782.)  “‘The imposition of an erroneous charge against an employer’s account, with the attendant consequence of his having to pay an increased contribution, amounts to a wrongful deprivation of property.  The petitioner, as a contributing employer, has a vital interest in the status or condition of its reserve account and *since the administrative decision here in question may affect its financial responsibility to the unemployment fund a sufficient right of property is involved to entitle it to a limited trial de novo as to the propriety of the charges made against its account*.’”  (*Id*. at p. 776.)  An employer has a “direct pecuniary interest in any payments made to a claimant which may be charged against his reserve account.”  (*Chrysler Corp. v. California Employment Stabilization Com*. (1953) 116 Cal.App.2d 8, 14.)

Our high court has allowed challenges to a decision regarding benefits.  For example, in *Matson Terminals, Inc. v. Cal. Emp. Com*. (1944) 24 Cal.2d 695—an employer petitioned for writ of mandamus to prevent enforcement of an order awarding unemployment insurance benefits.  (*Id*. at p. 698.)  The high court held that an employer whose reserve account may be affected by the payment of benefits may appeal from the initial determination and the decision of the referee.  (*Id*. at p. 701.)  “The act thus recognizes his adversary interest in preventing the illegal payment of benefits and does not limit his remedy to a protest of charges that have been made to his account after the disputed benefits have been paid.”  (*Id*. at p. 702.)  “He is a party ‘beneficially interested’ in the administrative proceeding to determine the award of

7

benefits and retains this status for the purpose of testing before a court of law the legality of the commission's final decision." (*Ibid*.)

More recently, in *Southwest Research Institute v. Unemployment Ins. Appeals Bd.* (2000) 81 Cal.App.4th 705, the appellate court ordered that a peremptory writ of mandate issue, setting aside the decision of the Board that the corporation be charged with unemployment compensation benefits. Such reversal was required because the appellate court determined that the worker was an independent contractor, not an employee, as had been determined by the Board. (*Id*. at p. 711.) Similarly, in *Metric Man, Inc. v. Unemployment Ins. Appeals Bd.* (1997) 59 Cal.App.4th 1041, the court considered a petition for writ of mandate, seeking to overturn the determination of the Board that a worker was an employee rather than an independent contractor.

A party seeking to challenge charges to a reserve account must comply with Unemployment Insurance Code section 1034. (Unemp. Ins. Code, § 1243.) Section 1034 provides: "The employer, within 60 days after the date of mailing of any statement of charges or credits and charges to the reserve account, or within an additional period not exceeding 60 days which may for good cause be granted by the director, may file with the director a written protest on any item shown thereon. The protest shall set forth the specific grounds on which it is made. *No protest may be made on the ground that a claimant was ineligible for a benefit payment where the employer was notified as required by this division and any authorized regulation of the filing of a claim for the benefits or of a determination of the claimant's eligibility therefor and the employer failed to file a timely appeal on the benefit claim, or a final decision of an administrative law judge or of the appeals board affirmed the payment of the benefits.* Except as to corrections made by the director as provided in Section 1036, the contribution rate and other items shown on any such statement of charges or statement of account shall be final unless a protest is filed within the time prescribed in this section." (Italics added.)

The italicized language indicates that a party that fails to challenge the Board's final decision when notified of the claim, may not subsequently seek judicial review.

8

The Board argues that "[Unemployment Insurance Code] [s]ection 1034, subdivision (a)'s exclusion of protests for charges that were subjects of final administrative appeals, however, in no way bars a tax refund action . . . . It simply prevents employers such as Voda Spa from having a second bite at the apple to protest charges that had already been administratively appealed. [¶] Neither section 1034 nor section 1243 affects Voda Spa's ability to make a claim for or sue for a tax refund." The problem with the Board's argument is that the subject of sections 1034 and 1243 are not a tax refund but a challenge to charges to the party's reserve account. A party with sufficient notice (as in this case) that does not challenge the Board's decision charging the reserve account, is foreclosed from later making such challenge.

### 3. First Aid, Supra, *133 Cal.App.4th 1470*

*First Aid, supra*, 133 Cal.App.4th 1470 blurs the distinction between a tax and a benefit. In *First Aid*, an employer sought mandamus review of a challenge to the Board's decision that a person was an employee rather than an independent contractor. (*Id*. at p. 1477.) That decision occurred in the context of determining whether a worker was entitled to unemployment insurance benefits. (*Id*. at p. 1476.) Extending *Modern Barber Colleges*, *First Aid* held that mandamus could not be used to challenge an administrative determination that persons were employees rather than independent contractors even though no tax had been assessed. (*First Aid, supra*, at pp. 1480-1481.) The court reasoned that "the net result of the relief prayed for in the challenged mandamus proceeding at issue here—reversal of the Board's finding that [a worker] is an employee of First Aid—would be to restrain the collection of unemployment insurance contributions allegedly owed by First Aid under the provisions of the Unemployment Insurance Code based on the employer-employee relationship the Board found exists between First Aid and [its worker]." (*Id*. at p. 1480.)

We agree with *First Aid* to the extent it holds that, if the "net result of the relief prayed for herein would be to restrain the collection of the tax allegedly due, the action must be treated as one having that purpose," as that is required by *Modern Barber Colleges, supra*, 31 Cal.2d at page 723. However, here there is no allegation or

9

evidence subject to judicial notice that the action is one to restrain the collection of a tax allegedly due, or imminently due. Therefore, at this early state in the proceedings, we must assume that no tax was assessed or was allegedly due. Therefore, Voda Spa may seek judicial review of the Board's determination that Serban was an employee, not an independent contractor.

The Board's argument that section 32, Unemployment Insurance Code section 1851, *Modern Barber Colleges* and *First Aid* compel a different result, is not persuasive. First, the Board acknowledges that "the charge to Voda Spa's reserve account resulting from benefits awarded to Serban is not a tax payment within the meaning of article XIII, section 32 or section 1851. The only effect of the charge, is the likelihood that Voda Spa's future reserve ratio will decrease, resulting in a higher future contribution rate."[1] Second, this case is different from *Modern Barber Colleges* because here, no tax was assessed in contrast to *Modern Barber Colleges*, in which a tax had been assessed and the petitioning party sought to avoid the tax. That distinction is important because *Modern Barber Colleges* was based on applying a provision similar to section 32, which prohibits a lawsuit to prevent the collection of a tax. Similarly, section 32 and Unemployment Insurance Code section 1851 apply only to lawsuits seeking to prevent the collection of a tax. Finally, to the extent *First Aid* requires a different result, we conclude that *First Aid*'s extension of *Modern Barber Colleges* improperly blurs the tax/benefit distinction. Because there was no assessment in this case, the pay now, litigate later rule, is simply inapplicable.

---

[1] The higher an employer's reserve ratio, the lower the employer's tax. (*Lorco Properties, Inc. v. Department of Benefit Payments* (1976) 57 Cal.App.3d 809, 813.) "'The reason for this is simply that when an employer's reserve ratio is high it indicates his experience with unemployment has been good and his percentage of unemployment relatively low, and this results in a favorable rate of tax.'" (*Ibid.*)

**DISPOSITION**

The judgment is reversed. The trial court is directed to enter a new order denying respondent's motion to strike. The parties are to bear their own costs on appeal.

FLIER, J.

WE CONCUR:

BIGELOW, P. J.

GRIMES, J.